ROUSE, HEMPSTONE & CO., INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 7673, 10987.   Promulgated August 8, 1927.

1. Petitioner took over the assets of a partnership, issuing to the partners stock for a part of the value thereof and agreeing to pay cash to the partners for their interests in excess of the value purchased for stock.   Thereafter one of the partners elected to take additional stock in the amount of $98,000 in lieu of a part of the cash due him and subsequently the balance due the partners was ascertained and paid to them.  *Held,* the amount of $98,000 paid one of the partners in stock may not be included in invested capital prior to the date of issuance of the stock.   Further *held* that the amount due the partners was borrowed capital until the cash was paid and may not be included in invested capital prior to the date of payment.

2. Petitioner took over the merchandise of the partnership at cost to the partnership, issuing stock therefor.  *Held,* the petitioner may write up its opening inventory to actual value in determining cost of goods sold.

3. Evidence does not establish that accounts written off as bad debts were ascertained to be worthless in the taxable years.

4. Commissioner's reduction of invested capital on account of taxes for prior years approved with such changes as are necessary to reflect the correct amounts of taxes for the prior years.

5. Invested capital may not be reduced in determining the extent to which a dividend is paid from current earnings of the year by an estimated tax theoretically set aside out of such earnings pro rata over such year.

*Chester A. Gwinn, Esq.,* for the petitioner.
*F. O. Graves, Esq.,* for the respondent.

These appeals are from determinations of deficiencies in income and profits taxes for the fiscal years ended November 30, 1918, 1919, and 1920, in the respective amounts of $14,430.33, $1,634.61, and $8,598.30.   At the hearing petitioner abandoned its claim for special assessment for the fiscal year 1918.   Of the remaining issues one relates to claimed bad debts for the years 1919 and 1920, one to the inventory value to be used in determining cost of goods sold, and the rest relate to invested capital.

FINDINGS OF FACT.

The petitioner is a Maryland corporation with its principal office at Baltimore.   It was organized December 1, 1917, with an authorized capital stock of $1,000,000, divided into 5,000 shares of common and 5,000 shares of preferred stock of the par value of $100 per share.

The petitioner was incorporated for the purpose of succeeding to the firm of Rouse, Hempstone & Co., which theretofore had been engaged under a series of partnership agreements in business as importers, jobbers, and vendors of hosiery, gloves, white goods, ladies' and men's furnishings, notions and fancy goods.

The balance sheet of the partnership at November 30, 1917, as revised by a revenue agent was as follows:

| ASSETS | | LIABILITIES | |
|---|---|---|---|
| Cash | $63,788.66 | Reserve for depreciation | $11,971.66 |
| Accounts receivable | 504,861.98 | Capital | 1,050,461.98 |
| Bills receivable | 192,456.80 | | |
| Merchandise inventory | 232,430.72 | | |
| Stocks | 31,349.43 | | |
| Furniture and fixtures | 14,602.54 | | |
| Trucks | 4,094.51 | | |
| Horses and wagons | 2,203.21 | | |
| Automobiles | 572.18 | | |
| Real estate | 37.98 | | |
| Liberty bonds | 15,000.00 | | |
| Accrued interest | 1,035.60 | | |
| | 1,062,433.61 | | 1,062,433.61 |

By letter dated December 1, 1917, addressed to the board of directors of the petitioner, the members of the partnership offered to subscribe for 3,980 shares of preferred stock and 4,470 shares of common stock of the petitioner, a total of 8,450 shares of the par value of $845,000, and agreed to pay for such stock on the terms set forth in the letter as follows:

By assigning, transferring and delivering to your corporation all the assets of the said partnership of Rouse, Hempstone and Company, of every kind, nature and description, including

(a) all office and store furniture and fixtures, trucks, wagons, signs, and other similar property and apparatus of the business contained in building at the corner of Hopkins Place and German Street, or wherever else situated;

(b) all merchandise of every kind belonging to said partnership, whether contained in said building, in transit, or wherever situated, said merchandise consisting chiefly of hosiery, gloves, white goods, ladies' and gentlemen's furnishing goods, notions and fancy goods;

(c) all stocks, bonds, or promissory notes, or other choses in action, and all cash and moneys on deposit in banks, belonging to said partnership;

(d) all bills and accounts receivable from any and all persons, firms or corporations, belonging to said partnership;

(e) all the good-will, trade-marks, patents, patent rights and licenses belonging to said partnership.

Your corporation is to assume and agrees to pay any and all liabilities of said partnership, including United States War Excess Profits Tax due from said partnership, and any other Federal or State taxes payable by it; and you are also to assume and agree to execute in due course of business, all

current contracts, orders and obligations of said partnership, including assumption of leases on real estate and obligations for rent payable thereunder.

The present net worth of the partnership assets over and above liabilities exceeds the sum of one million dollars ($1,000,000) and the present net capital interests of all the partners in said assets exceeds the following sums for said partners respectively:

| | |
|---|---:|
| Wm. C. Rouse | $540,000 |
| John G. Rouse | 20,000 |
| Edward M. Buracker | 260,000 |
| George W. Corner, Jr | 80,000 |
| Benjamin C. Eley, Jr | 80,000 |
| Thomas J. Kelly | 25,000 |
| | 1,005,000 |

The exact amounts by which the net capital interests of the said partners respectively exceeds the sums above mentioned cannot be exactly ascertained until the outstanding accounts are hereafter in due course collected and the Federal Excess Profits Tax determined. Your corporation is to assume and agree to pay to said partners respectively, as and when the net amounts above mentioned have been ascertained, such sums of money as, when paid to them respectively, will reduce the net shares of said several parties to the exact sums above mentioned, except that to the said Edward M. Buracker there shall be paid such sum as will reduce his net share of the capital to one hundred thousand dollars ($100,000) ; said payments to be made to said Edward M. Buracker, and other partners, from time to time pro rata as the amounts are ascertained; so that upon final payments to all said partners, the net value of all the partnership assets (over and above all liabilities) so passing to your corporation as of December 1st, 1917, will be eight hundred and forty-five thousand dollars ($845,000).

At a meeting of the board of directors of the petitioner the offer made by the members of the partnership was considered and the following resolution, among others, was adopted:

AND WHEREAS, said property mentioned and referred to in said offer is suitable for the purpose of the corporation:

Now, THEREFORE, BE IT RESOLVED, that in the judgment of the Board of Directors of Rouse, Hempstone and Company, Incorporated, it is advisable to issue three thousand nine hundred and eighty (3,980) shares of the Preferred Stock of this corporation, and four thousand four hundred and seventy (4,470) shares of the Common Stock of this corporation in payment for property suitable for the purposes of this Company, and specified in writing by Messrs. William C. Rouse, John G. Rouse, George W. Corner, Jr., Thomas J. Kelly, Benjamin C. Eley, Jr., and Edward M. Buracker, dated December 1st, 1917, said property being valued by its Board of Directors at the sum of eight hundred and forty-five thousand dollars ($845,000), and the issuance of three thousand nine hundred and eighty (3,980) shares of the Preferred Stock and four thousand four hundred and seventy (4,470) shares of the Common Stock of this Company for said property, be and it is hereby expressly authorized; and that said offer of Messrs. William C. Rouse, John G. Rouse, George W. Corner, Jr., Thomas J. Kelly, Benjamin C. Eley, Jr., and Edward M. Buracker, to subscribe for said three thousand nine hundred and eighty (3,980) shares of Preferred Stock and four thousand four hundred and seventy (4,470) shares of Common Stock of this Company, be and it is hereby accepted  *  *  *

On the same date, December 1, 1917, capital stock of the petitioner was issued to members of the partnership as follows:

| | |
|---|---:|
| William C. Rouse | $460,000 |
| John G. Rouse | 100,000 |
| Edward M. Buracker | 100,000 |
| George W. Corner, Jr. | 80,000 |
| Benjamin C. Eley, Jr. | 80,000 |
| Thomas J. Kelly | 25,000 |
| | 845,000 |

On January 11, 1918, the directors of the petitioner confirmed sales of 570 shares of stock to employees and salesmen for $57,000 cash.

At the time of the meeting on December 1, 1917, Edward M. Buracker, one of the partners, was too ill to decide fully to what extent he desired to participate in the new corporation. Subsequently, he decided to take additional stock and at the directors meeting on January 11, 1918, the remaining unsold stock, being 735 shares of preferred and 245 shares of common, a total of 980 shares, were issued to him. For this stock of the par value of $98,000 the petitioner accepted in payment a part of Buracker's interest in the partnership in excess of the amount of $100,000 in stock originally issued to him.

On January 24, 1918, the excess of the net worth of the partnership over the par value of the capital stock of the petitioner was ascertained and such excess was paid by the petitioner to the former partners as follows:

| | | |
|---|---:|---:|
| William C. Rouse, January 24, 1918 | | $15,078.66 |
| George W. Corner, Jr., January 25, 1918 | | 4,948.98 |
| Thomas J. Kelly, January 25, 1918 | | 4,745.26 |
| Benjamin C. Eley, Jr., January 25, 1918 | | 3,967.28 |
| Edward M. Buracker: | | |
| March 20, 1918 | $3,029.47 | |
| April 4, 1918 | 10,000.00 | |
| April 9, 1918 | 57,112.11 | |
| | | 70,151.58 |
| Total | | 98,891.76 |

The amount of $232,430.72, set forth above in the partnership balance sheet, represents the cost to the partnership of the merchandise carried in its inventory on November 30, 1917, and was entered on the books of the petitioner as its opening inventory at December 1, 1917. That value was arrived at by taking a detailed inventory of all stock on hand, and represents the value of the merchandise at the time it was invoiced to the partnership. In many cases there was an advance in price between the time the goods were invoiced and the time of their receipt by the partnership. During the year preceding petitioner's organization, there occurred a marked

increase in the market value of the kind of goods dealt in by the petitioner. In order to give effect to such increase in market value, the petitioner in the latter part of 1925 undertook a revision of its opening inventory of December 1, 1917, which had been taken in detail. The petitioner's merchandise was grouped into five numbered departments and a sample department. In Department I were what was known as small wares, that is odds and ends or notions. The inventory of that department amounting to $23,752.98 and of the sample department which was $515.73 were not priced in the revision made in 1925 although the value of the goods in those departments was higher than the figure at which they were entered in the petitioner's opening inventory. In the other four departments the merchandise was repriced in accordance with its market value at December 1, 1917. Adding the repriced inventory of the four departments and the original inventory figures for the notions and sample departments, gives an opening inventory of the market value of $286,349.72.

In computing the cost of goods sold for the fiscal year ended November 30, 1918, the Commissioner took as the petitioner's opening inventory the amount of $232,430.72, which, as stated above, was the cost thereof to the predecessor partnership.

Most of the petitioner's sales are to country merchants and small stores in cities in the southern and eastern States. In 1917 goods were sold mainly on six months' credit and thereafter on four months' credit. Before extending credit the petitioner secured information as to the credit standing of the customer through such agencies as Dun and Bradstreet, through local attorneys and banks or through a system of interchange of credit information with other wholesale houses. When an account had run two or three months beyond the credit period and the debtor failed to answer letters of the petitioner, or when the petitioner received advice that a receiver had been appointed or bankruptcy proceedings instituted against the debtor, the treasurer of the petitioner, who was also its credit manager, directed that such account be taken off the active books and put on a "suspended ledger." In many cases collections were subsequently made on the accounts written off and in such cases the amounts collected were reported as income for the year in which received.

During the year ended November 30, 1919, the petitioner charged off as bad debts and claimed as a deduction from gross income for that year the amount of $9,309.10, of which the Commissioner allowed $4,272.29 and disallowed $5,036.81. During the fiscal year ended November 30, 1920, the petitioner charged off as bad debts and claimed as a deduction the amount of $57,359.69, of which the

Commissioner allowed $29,621.12 and disallowed $27,738.57. The amounts allowed by the Commissioner as deductions for bad debts for the years 1919 and 1920 (except for one account of $3,251.51 charged off by petitioner in 1920) were the amounts claimed by the petitioner, less collections made thereon during the period beginning December 1, 1920, and ending September 1, 1925, which collections have been reported by the petitioner as income for the years in which collected. The amount of $3,251.51 disallowed by the Commissioner as a deduction for 1920 represents an account charged off on November 30, 1920. The petitioner obtained a judgment against the debtor, but was advised by attorneys in 1925 and again in 1926 that they were unable to collect on the judgment.

The amounts charged off by petitioner as bad debts in prior years and collected and restored to income in 1919 and 1920 were $6,356.74 and $7,622.13, respectively.

The Commissioner reduced petitioner's invested capital for the fiscal year ended November 30, 1919, by the amount of $92,341.91, representing the prorated portion of tax determined for the preceding year. For the fiscal year ended November 30, 1920, the Commissioner reduced petitioner's invested capital by the entire amount of tax determined for the year 1918 and by a prorated portion of tax determined for the year 1919.

In the computation of invested capital for the fiscal year ended November 30, 1920, the Commissioner reduced the amount of current earnings available for the payment of dividends on February 2, 1920, by a tentative tax for that year in the amount of $36,594.83, thereby finding the amount of $46,942.63 paid from surplus, which, prorated for the balance of the year, resulted in the reduction of invested capital by the amount of $38,862.34.

OPINION.

ARUNDELL: The errors alleged with respect to invested capital for the fiscal year ended November 30, 1918, are that the Commissioner failed to allow the inclusion as paid-in surplus of $98,000 for the period December 1, 1917, to January 10, 1918, and $98,891.76 for the period December 1, 1917, to January 24, 1918.

The amount of $98,000 in dispute represents the par value of stock issued on January 11, 1918, to Buracker, a former partner, for a portion of his interest in the predecessor in excess of that part of the partnership assets turned in for stock. The amount of $98,891.76 here involved is the amount ascertained on January 24, 1918, as owing to the partners (in addition to Buracker's $98,000 paid for in stock) as the value of the partnership assets in excess of the amount thereof paid in to the petitioner corporation for stock on December 1, 1917.

The gist of the entire transaction was that the petitioner agreed to pay to the partners stock of the par value of $845,000 for a portion of the assets of the partnership, and, upon ascertaining the amount by which the assets exceeded that value, to pay such excess in cash to the partners. Thereafter Buracker decided to take $98,000 in stock for a part of the excess due him. Subsequently the balance due in cash to the partners was ascertained and paid to them. Buracker's $98,000 was properly an item of invested capital from the time stock was issued on January 11, 1918, and was so allowed by the Commissioner. As to that item for the period prior to the date of issuance of stock and as to the item of $98,891.76 for any period, we can not see that they belong in invested capital. They were sums borrowed from the stockholders for the time being under a definite obligation to repay them and as such they constituted borrowed capital, which, under both the Revenue Acts of 1917 and 1918 is specifically excluded from invested capital.

The second question for the fiscal year ended November 30, 1918, is whether the petitioner in determining the cost of goods sold is entitled to write up its opening inventory from its cost to the predecessor to market value at December 1, 1917. The petitioner's opening inventory was the same as the partnership's closing inventory, which was taken at cost of the goods to the partnership. The actual value at December 1, 1917, was considerably higher than cost. The petitioner seeks approval of the use of the higher amount which it determined in 1925 by ascertaining the actual December 1, 1917, value of a great number of items in each of four departments, applying the percentage of increase thus determined to the entire department, and adding to the sum thus obtained the cost to the partnership of the items in the two departments which were not repriced. The value of the merchandise in the two departments not repriced was less than 10 per cent of the total merchandise value and the value of those two departments had likewise increased to a figure above that at which carried on the partnership books. In many cases it was possible to ascertain the actual December 1, 1917, value by correspondence with the manufacturers of the merchandise, and in other instances the value of merchandise at that date was shown by the books of petitioner's buyers, to which reference was made in the repricing process.

We are convinced from the evidence that the petitioner's merchandise inventory at December 1, 1917, had a market value of at least $286,349.72. As the inventory, among other assets, was purchased for stock, that amount then becomes the cost of the merchandise to the petitioner, for, where goods are purchased for stock, in the absence of evidence of the market value of the stock, it is deemed equivalent in value to the property for which it was issued. *Appeal of William*

*Ziegler, Jr.*, 1 B. T. A. 186. The claim of the petitioner in respect of its inventory is the same as that made in *Appeal of Munising Motor Co.*, 1 B. T. A. 286. We disallowed the claim of the taxpayer in that case for lack of evidence to prove that the actual value was the amount contended for, but on the question of law we held as follows:

> The Board is of the opinion that the taxpayer had the legal right to use the actual proved cash value of the merchandise purchased by it from its predecessor as a proper inventory entry in its accounting and in computing the cost of merchandise sold by it in the business operations of its first taxable year.

We need not go so far in the present case, for there can be no question that the petitioner may value its opening inventory at cost and the cost we have found to be $286,349.72, which should be used in determining cost of goods sold for the first fiscal year.

The petitioner has failed to establish that the amounts charged in 1919 and 1920 as bad debts and disallowed by the respondent were ascertained to be worthless in those years. It was the practice of the petitioner to write off accounts which had run two or three months beyond the period for which credit had been extended or when word was received that the debtor was involved in bankruptcy or receivership proceedings. As set forth in the findings of fact, the Commissioner has allowed as deductions the amounts claimed by the petitioner, less amounts subsequently collected, except for one item of $3,251.51 charged off in 1920. The petitioner has not shown upon what facts it bases its claim that the accounts disallowed by the Commissioner were ascertained to be worthless in the years in which it charged them off. A good portion of the total allowed by the Commissioner is made up of the accounts in which the debtors were in bankruptcy or involved in receivership proceedings. In the cases of accounts disallowed, in which detailed evidence was given, it appears that the accounts were charged off at the close of the fiscal year in which the goods were sold and thereafter collections were made, in some cases within a few days after the close of the year, and in others within a month or two. In the case of the one item of $3,251.51 charged off in 1920, the only evidence offered was the advice received from attorneys in 1925 and 1926 that they were unable to collect on the judgment which had been obtained against the debtor. Such methods of charging off accounts may be commendable from the standpoint of valuing receivables conservatively in the balance sheet, but they do not establish the worthlessness of the debts.

Error is alleged against the Commissioner in reducing petitioner's invested capital for the fiscal year ended November 30, 1919, by a prorated portion of the tax determined for the previous year. The

method used by the Commissioner was correct, section 1207, Revenue Act of 1926; *Appeal of Russel Wheel & Foundry Co.*, 3 B. T. A. 1168; but adjustment should be made in the tax for 1918 by allowing the inventory value claimed by the petitioner in determining cost of goods sold. A like error is alleged with respect to the fiscal year ended November 30, 1920. This issue is governed by the same ruling as that applied to the fiscal year 1919; that is, the respondent is correct in principle, and only the amount of tax prorated requires revision.

The petitioner complains further against the Commissioner's reduction of invested capital for the year ended November 30, 1920, on account of taxes for the year ended November 30, 1918. One of the arguments of the petitioner is that the alleged " taxes " for 1918 are not taxes at all because they have never been determined to be such. The amount determined by the Commissioner to be due for any year is the tax for such year, unless contrary to the statute. The other ground advanced by the petitioner is that section 1207 of the Revenue Act of 1926 relates in terms only to taxes " for the preceding year," and hence does not allow the exclusion from invested capital for any year of tax for other than the immediately preceding year. The regulations of the Commissioner which were validated by section 1207 use the same language and refer only to taxes " for the preceding year." Article 845, Regulations 45. However, the reasoning applies to the due and unpaid taxes for all prior years, and the Commissioner's action is, in our opinion, correct.

A reduction of the income therefor will necessarily result in a reduction of surplus which will be reflected in invested capital. The invested capital as thus reduced remains throughout subsequent years and can be increased only by adding thereto such items as are allowed by statute. We have had several cases before us in which the Commissioner has reduced invested capital for the taxable year on account of unpaid taxes for more than one preceding year, and, though we did not rule in specific words on the question as raised here, we held that such reduction of invested capital was proper. *E. B. Crabtree Co.* v. *Commissioner*, 5 B. T. A. 732, and cases there cited.

The final issue is whether the Commissioner erred in the computation of invested capital for the fiscal year ended November 30, 1920, by reducing current earnings available for the payment of a dividend on February 2, 1920, by a tentative tax for that year. On this issue we must sustain the petitioner. *Appeal of L. S. Ayers & Co.*, 1 B. T. A. 1135.

Reviewed by the Board. .

*Judgment will be entered on 15 days' notice, under Rule 50.*