STIRES CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 43544.   Promulgated May 4, 1933.

*Arthur B. Brenner, Esq.*, for the petitioner.
*Mason B. Leming, Esq.*, for the respondent.

2

## OPINION.

ARUNDELL: In 1925 and 1926 petitioner sold stock of oil companies that it acquired in 1925 through the exercise of an option, as related in the findings of fact, and the principal question here is the determination of the proper basis for computation of gain or loss on the sales. The parties are agreed that the option must be taken into consideration in determining the basis for gain or loss. The petitioner contends that it should be taken into account at cost and that included in such cost is the amount it paid for the Homad Corporation stock, namely, $1,680,000. The respondent's position is that the option was acquired in connection with a reorganization and that under the Revenue Act of 1926 petitioner must use the same basis as its transferor, the Homad Corporation.

The essential facts may be briefly restated. Pforzheimer held an option on certain oil stocks. This he turned in to the Homad Corporation for all its stock on October 29, 1925. The next day, October 30, 1925, the Satterfield Corporation issued $1,680,000 par value of its stock to Pforzheimer for all of his stock of the Homad Corporation. On the same day, October 30, 1925, Pforzheimer purchased capital stock of the petitioner corporation for $150,000; petitioner in turn purchased from the Satterfield Corporation all the stock of the Homad Corporation for $1,680,000, payable $150,000 in cash and the balance on or before June 30, 1926, evidenced by petitioner's promissory note. The cash and note were delivered to the Satterfield Corporation and it delivered to petitioner the Homad Corporation stock. Petitioner thereupon dissolved the Homad Corporation, assuming its liabilities, and received the option as an asset in liquidation.

The option was put through the several corporations admittedly for the purpose of stepping up the basis, according to the testimony, as "a means to an end," which was to "legally avoid, if possible, the payment of tax until the whole transaction should be closed." While devices to avoid taxes should be subjected to the closest scrutiny to see that they are what they purport to be, if they are and if they do not transgress the statute, they may not be condemned because of the motive that prompted resort to them. *United States* v. *Isham*, 17 Wall. 496; *Bullen* v. *Wisconsin*, 240 U.S. 625.

Considering the several transactions in chronological order, it is clear that the first, the assignment of the option by Pforzheimer to

the Homad Corporation for stock, would not serve to increase the basis. That transfer comes within section 204 (a) (8),[1] under which the Homad Corporation would be required to use the same basis as Pforzheimer.

The next step was Pforzheimer's transfer of his Homad Corporation stock to the Satterfield Corporation for stock of the latter having a par value of $1,680,000. The respondent argues that the intervention of the Satterfield Corporation should be disregarded entirely, but that if it is to be taken into consideration, the cost to it of the Homad stock was nothing. We do not believe that the existence of the Satterfield Corporation can be thus ignored. It was as important a link in the chain of events as the other two corporate participants. If the Satterfield Corporation is to be disregarded, so should the other two, and yet we are asked to recognize the Stires Corporation to the extent of sustaining a deficiency against it.

In *Evelyn F. Gregory*, 27 B.T.A. 223, the sole stockholder of a corporation caused a second corporation to be organized. The old corporation then transferred certain assets to the new, which issued all its stock therefor to the stockholder in the old corporation. The new corporation then liquidated and distributed its assets to its sole stockholder, who thereupon sold such assets, and reported a gain based apparently upon the value when acquired by the new corporation. The respondent asserted a deficiency based on the view that the creation of the new corporation was without substance and should be disregarded, and that the stockholder should be taxed as upon a dividend consisting of the amount received upon the sale as if such amount had been distributed directly by the old corporation. We refused to subscribe to the respondent's theory and held that the tax should be predicated upon the statutory recognition of a reorganization, liquidation, and sale. We said in part:

Congress has not left it to the Commissioner to say, in the absence of fraud or other compelling circumstances, that the corporate form may be ignored in some cases and recognized in others. Whatever can be said of the wisdom of

---

[1] [Section 204 (a) (8).] If the property (other than stock or securities in a corporation a party to a reorganization) was acquired after December 31, 1920, by a corporation by the issuance of its stock or securities in connection with a transaction described in paragraph (4) of subdivision (b) of section 203 (including, also, cases where part of the consideration for the transfer of such property to the corporation was property or money in addition to such stock or securities), then the basis shall be the same as it would be in the hands of the transferor, increased in the amount of gain or decreased in the amount of loss recognized to the transferor upon such transfer under the law applicable to the year in which the transfer was made.

[Section 203 (b) (4).] No gain or loss shall be recognized if property is transferred to a corporation by one or more persons solely in exchange for stock or securities in such corporation, and immediately after the exchange such person or persons are in control of the corporation; but in the case of an exchange by two or more persons this paragraph shall apply only if the amount of the stock and securities received by each is substantially in proportion to his interest in the property prior to the exchange.

recognizing the corporate device, the taxing statutes have so plainly accepted it and provided the detailed methods of taxing its transactions, that to disregard it in a case like this would vary the time, method and amount of tax which the statute imposes.

\*        \*        \*        \*        \*        \*        \*

It should be remembered, when considering the effects upon tax liability or corporate plans, that the statute has, since the Act of 1918, provided in more or less detail the system of tax determination, and this system unmistakably permits the *bona fide* use of the corporate device. That its effect may be, as here, to tax a profit piecemeal over several periods is so clearly within the legislative system that it can not be denied. As a result of it, the benefit of one year may be the burden of another; and the incidence of the statute may be as favorable to the Government in one case as it is unfavorable in another. A statute so meticulously drafted must be interpreted as a literal expression of the taxing policy, and leaves only the small interstices for judicial consideration. The general legislative plan apparently was to recognize the corporate entity and, in view of such recognition to specify when the gains or losses would be recognized and upon what basis they should be measured. We may not destroy the effectiveness of this statutory plan by denying recognition to the corporation and thus preventing consideration of its transactions.

In the present case the respondent does not ask us to go so far as to disregard all the corporations, or to treat them as mere agencies of Pforzheimer, but only to ignore the one in which originated the stepped-up basis here claimed. This one, the Satterfield Corporation, existed as long, and was at least as substantial, as the petitioner and we do not see upon what ground we would be warranted in disregarding it while recognizing the others. Cf. *Evelyn F. Gregory, supra.*

Nor do we think it can be said that the Homad stock had no " cost " to the Satterfield Corporation. True, the Satterfield Corporation had no assets when it issued its stock, but in such cases the rule is that cost is determined by the value of the assets acquired. *Rouse, Hempstone & Co.*, 7 B.T.A. 1018. The evidence satisfactorily establishes that on October 30, 1925, the option, which was Homad's sole asset, was worth $1,680,000 in excess of the obligations it imposed. The real question, in so far as the Satterfield Corporation is concerned, is whether its basis is cost, this being the primary basis under section 204 (a), or whether the basis is limited by one of the several exceptions. The only suggested exception, and the only one which it appears might possibly be designed to apply in this situation, is paragraph (7), which reads:

If the property (other than stock or securities in a corporation a party to the reorganization) was acquired after December 31, 1917, by a corporation in connection with a reorganization, and immediately after the transfer an interest or control in such property of 80 per centum or more remained in the same persons or any of them, then the basis shall be the same as it would be in the hands of the transferor, increased in the amount of gain or decreased

in the amount of loss recognized to the transferor upon such transfer under the law applicable to the year in which the transfer was made.

But this, petitioner argues, is inapplicable because it specifically excepts from its operation " stock or securities in a corporation a party to the reorganization." There would seem to be no doubt that the issuance of Satterfield stock for Homad stock was a " reorganization " and that each corporation was " a party to the reorganization " as those terms are defined in section 203 (h).[2] If petitioner's argument is sound, it follows that a corporation may issue stock for property other than stock without a recognition of gain or loss and without a changed basis as to such property, but that if stock is issued for stock, while no gain or loss is recognized on such exchange, nevertheless a new basis for gain or loss on the sale of stock so acquired may be created. On this latter proposition counsel for the respondent has specifically so ruled in G.C.M. 7285, CB IX–1, p. 181. In that case an individual, A, owning a majority of stock in M company exchanged such stock for all the stock of the N company, which in turn exchanged the M company stock for stock of the O company. It was held that the basis of the M company stock in the hands of both N and O companies was cost to them, and they were not limited to the basis of the stock in the hands of A.

The difference under the Revenue Act of 1926 between the basis applicable to stock acquired for stock and other property acquired for stock, does not obtain under the later acts. The corresponding provisions of the Revenue Act of 1928 (section 113 (a), paragraphs 7 and 8) omit the parenthetical phrase which excluded stock or securities from the operation of the limitation under the 1926 Act. In section 113 (a) (7) of the 1928 Act, which corresponds to section 204 (a) (7) of the 1926 Act, the following sentence is added in lieu of the parenthetical phrase:

This paragraph shall not apply if the property acquired consists of stock or securities in a corporation a party to the reorganization, unless acquired by

---

[2] [Section 203 (h).] As used in this section and sections 201 and 204—

(1) The term " reorganization " means (A) a merger or consolidation (including the acquisition by one corporation of at least a majority of the voting stock and at least a majority of the total number of shares of all other classes of stock of another corporation, or substantially all the properties of another corporation), or (B) a transfer by a corporation of all or a part of its assets to another corporation if immediately after the transfer the transferor or its stockholders or both are in control of the corporation to which the assets are transferred, or (C) a recapitalization, or (D) a mere change in identity, form, or place of organization, however effected.

(2) The term " a party to a reorganization " includes a corporation resulting from a reorganization and includes both corporations in the case of an acquisition by one corporation of at least a majority of the voting stock and at least a majority of the total number of shares of all other classes of stock of another corporation.

the issuance of stock or securities of the transferee as the consideration in whole or in part for the transfer.

Section 113 (a) (8) of the 1928 Act simply omits the parenthetical phrase without the addition of any new provision to take its place. The reason for these changes is given in the report of the House Committee on Ways and Means accompanying the Revenue Act of 1928. Rept. No. 2, 70th Cong., 1st sess., pp. 18, 19. In that report the Committee, for the purpose of illustrating the operation of section 204 (a) (8), assumes that individuals purchase all the stock of corporation A for $100,000 at a time when the corporate assets are worth that amount. Upon appreciation of the assets to a value of $1,000,000, the stockholders organize corporation B and exchange their stock in A for all the stock of B, and then B sells the A stock for $1,000,000. The report then proceeds as follows:

> Obviously the gain of corporation A should be $900,000 the amount by which the $1,000,000 realized from the sale exceeds $100,000, the cost to A's stockholders of their stock, since the transfer of their stock to B in exchange for the stock of B was tax-free. It is claimed that section 204 (a) (8) of the 1926.Act does not apply to such a case because it excludes from the rule therein laid down, stock or securities in a corporation a party to the reorganization.
>
> While it is quite possible that the courts, in view of the general purposes of section 204 of the 1924 and 1926 Acts, would not adopt such a construction, nevertheless, to remove any doubt, the new bill in the corresponding paragraph (section 113 (a) (8)) omits these words of limitation, thus making it clear beyond doubt that in the example above, corporation B would have a basis of only $100,000 for the purpose of computing the gain derived from the sale of its stock in corporation A.
>
> A similar change is made in the bill in section 113 (a) (7) (corresponding to section 204 (a) (7) of the 1926 Act).

To the same effect is the report of the Senate Committee on Finance. Rept. No. 960, 70th Cong., 1st sess., pp. 27, 28. See also Miller's " Reorganizations and Other Exchanges in Federal Income Taxation," ch. 18, §192. The provisions of section 113 (a) (7) and (8) are not made retroactive by the 1928 Act and counsel for the respondent in G.C.M. 7285, *supra,* has refused to apply them as interpretative of the 1926 Act.

The construction that has been placed on section 204 (a) (7) in respondent's ruling G.C.M. 7285, *supra,* appears to us to be sound, in view of the wording of that section specifically excluding from its operation stock or securities in a corporation a party to the reorganization. It follows that section 204 (a) (7) does not apply to the Satterfield Corporation's acquisition of the Homad Corporation stock, and, as none of the other provisions relating to limitation of basis appear to fit the case, the conclusion must be reached that the

basis of the Homad stock in the hands of the Satterfield Corporation is not limited to the basis that the transferor, Pforzheimer, would be required to use in computing gain or loss. Consequently, the Satterfield Corporation is required to take as its basis the primary basis laid down by the statute, namely, cost of the stock. It is only where one of the several exceptions listed under section 204 (a) applies that any basis other than cost may be used. Cost to the Satterfield Corporation, in view of its acquisition for stock, is the value of the property acquired, and this value is established to be $1,781,000. This amount, as set out in the findings, is $1,680,000 in excess of the $100,000 cost of the option to Pforzheimer plus the current liabilities of the Homad Corporation which the Satterfield Corporation assumed in an amount not to exceed $1,000.

Our next inquiry is whether, upon petitioner's acquisition of the Homad stock, the basis to it was any different from the basis to the Satterfield Corporation. The respondent does not contend that in this transaction the basis suffered any change, and we see no reason why it should. The transfer was effected in the form of a purchase and sale and the obligation of the purchaser was in due course completely liquidated. In this transfer neither the stock of the Homad Corporation nor the option suffered any diminution of value. The stock cost petitioner $1,680,000 plus the assumed obligations, and upon liquidation that cost would apply to the asset received, namely, the option. We accordingly hold that petitioner is entitled to include the sum of $1,680,000 as cost in determining gain or loss on the sale of the oil stocks which it obtained under the option.

The next question has to do with the proper treatment of the amount of $362,434.60 paid by petitioner in 1926 to various persons for services performed in connection with Pforzheimer's acquisition of the option. Petitioner deducted this amount as an expense in 1926, and respondent treated it as a part of the cost of the oil stock obtained under the option and allocated a proportionate part to the years in which the stocks were sold. The evidence is that Pforzheimer enlisted the services of these individuals to use their influence with the controlling interests of the Franco Wyoming Oil Co. Pforzheimer agreed to compensate them if the deal proved profitable, and his agreement in that respect was assumed by petitioner. In the written offers from Pforzheimer to the Satterfield Corporation and from the Satterfield Corporation to petitioner it was stated that these persons would be entitled to share in the profits if amounts were realized " in excess of present market values." When in 1926 it became evident that a profit would be realized petitioner decided

to and did discharge the obligation rather than to wait until the sale of the stocks was completed. The payment was not for services rendered in that year and had no more direct relation to business conducted in that year than in the other years over which the sales were spread. In our opinion the sum paid in 1926 was as much a cost of the stocks as was the $100,000 paid for the option, and the respondent properly so treated it. Inasmuch as the payments were to be made only in the event that sales prices were in excess of the values at October 30, 1925, there is no occasion for decreasing that value by reason of the obligation. Petitioner says that so treating the sum in controversy will result in a refund to it for 1925 and a net loss for 1926. Upon the record we cannot tell whether this is so or not, and it is reserved for determination under Rule 50.

Petitioner alleges, and respondent denies, that it paid $31,900 in 1926 to the Satterfield Corporation as interest on its indebtedness. The respondent disallowed a claimed deduction in that amount in petitioner's return for 1926. The only evidence on this question is the testimony of one witness to the effect that the interest paid to the Satterfield Corporation was disallowed. There is no evidence as to the amount paid. The note of petitioner to the Satterfield Corporation does not provide for the payment of interest. A number of checks of petitioner are in evidence, but none of them are identified as interest payments. Inasmuch as there is an issue as to whether any amount was paid as interest, we must decide against petitioner on the ground that the amount paid, if any, has not been established.

Petitioner claims a deduction from 1926 income in the amount of $75 for capital stock tax stamps attached to its stock books upon the issuance of its stock. The deduction claimed was disallowed by respondent, with the explanation that it was an " organization expense." Under our decisions amounts paid for revenue stamps in connection with the issue of capital stock are deductible as " taxes paid," *United States Playing Card Co.*, 15 B.T.A. 975; *Borg & Beck Co.*, 24 B.T.A. 995, and we hold that petitioner is entitled to the deduction sought.

The final question is whether a deduction may be had in 1925 for the amount of $100 paid for one year's representation service of petitioner in the State of Delaware, where petitioner was incorporated. It is customary for states to require the maintenance of offices within their borders by companies incorporated therein. We are of the opinion that the cost of maintaining such an office is an ordinary and necessary expense and the deduction claimed should be allowed.

Reviewed by the Board.

*Decision will be entered under Rule 50.*