Considered by STERNHAGEN, LANSDON, and ARUNDELL.

---

HERMAN ADASKIN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 9591.      Promulgated October 4, 1927.

Taxpayer acquired assets at a cost of $105,000 which on the same day he transferred to a newly organized corporation in exchange for shares of preferred and common stock; later, on the same day, the corporation acquired other assets in exchange for shares of its common stock. *Held*, that the two transactions were separate. *Held, further*, that the evidence does not warrant a finding that the shares of stock received by the taxpayer had a fair market value in excess of the value of the assets transferred to it by the taxpayer, or that the taxpayer derived taxable income from the transaction.

*Frederick W. Tillinghast, Esq.*, and *Roger T. Clapp, Esq.*, for the petitioner.

*J. W. Fisher, Esq.*, for the respondent.

This is a proceeding for the redetermination of a deficiency in income tax for 1919 of $18,174.01, arising in large part from the addition to the net income returned by the taxpayer of $53,880.99, alleged to be profit from the sale or disposition of assets acquired by the petitioner from the Anthony Furniture Co. to the Flint-Adaskin Furniture Co.

FINDINGS OF FACT.

Prior to December 5, 1919, Herman Adaskin, a retail furniture merchant of Springfield, Mass., pursuant to a plan of expanding his

business by establishing branches, proposed to establish a branch in Providence, R. I., by consolidating the businesses of two furniture companies located there, namely, Anthony Furniture Co. and Flint & Co., Inc., neither of which concerns had been doing a prosperous business. The Anthony Furniture Co. had been operating at a loss, and Flint & Co., Inc., had been operating at only a small profit.

With this end in view, Adaskin negotiated with the stockholders of the Anthony Furniture Co. and with those of Flint & Co., Inc., and arranged a meeting of all parties to be held on the evening of December 5, 1919, for the purpose of completing and consummating the deal.

Upon the basis of negotiations previously had with the stockholders of these two companies, the petitioner caused to be incorporated on December 5, 1919, a new corporation under the laws of Rhode Island, which was called the Flint-Adaskin Furniture Co., with an authorized capital stock of $425,000, $175,000 of which was preferred stock and $250,000 common stock. Until the evening of December 5, 1919, none of this stock was issued except three shares of common stock as qualifying shares. On the evening of December 5, Adaskin brought together in one room the owners of all the outstanding stock of the Anthony Furniture Co. and the owners or proxies for the owners of all the stock of Flint & Co., Inc. He then purchased all of the stock of the Anthony Furniture Co. for $105,000 cash. At 6 p. m. a meeting of the stockholders of the Anthony Furniture Co. was held and the stockholders voted to liquidate its affairs by transferring to Adaskin all of its assets in exchange for its entire capital stock. The assets were thus placed in his hands as an individual and transfers, bills of sale, assignments, assignment of lease, etc., were recorded and delivered. Immediately thereafter Adaskin caused a meeting of the stockholders of the Flint-Adaskin Furniture Co. to be held and submitted to them the following offer:

I have purchased all the property and assets of every kind and nature, wherever situated, real, personal and mixed, of Anthony Furniture Company, a corporation under the laws of the State of Rhode Island and located in Providence, as of the close of business on December 5, 1919. I will convey, assign and transfer to your company or cause to be conveyed, assigned or transferred to it by a good and sufficinet instrument or instruments of conveyance, assignment or transfer all of said property and assets of every kind and nature, wherever situated, real, personal and mixed of said Anthony Furniture Company as of the close of business on said December 5, 1919 upon the following terms and conditions:

1. You are to issue to me at once one hundred five thousand dollars ($105,000) in the first preferred stock of your company at par.

2. The total assets and properties of said Anthony Furniture Company and of Flint and Company, Incorporated, shall be appraised by a method acceptable to Richard E. Smith, J. Palmer Barstow and myself, which method shall be the

same in the manner of appraisal of both of the said companies' total assets and properties, and in case the total net assets and properties of said Anthony Furniture Company shall exceed the total net assets and properties of said Flint and Company, Incorporated, as shown by said appraisal, you are to issue to me, in addition to the foregoing, an amount of the first preferred stock of your company at par equal to one-half of the said difference in total net assets.

3. You are also to issue to me at once one hundred forty-two thousand five hundred dollars ($142,500) in the common capital stock of your company at par.

4. I will further agree in the event of your accepting this offer to return to your company for its use as treasury stock, common stock in your company of the par value of fourteen thousand dollars ($14,000).

5. At the time of the transfer your company is to deliver to me a proper and sufficient agreement assuming the payment of all the debts, obligations and liabilities of every name and nature and the performance of all the contracts and agreements of every kind of said Anthony Furniture Company, or assumed by me in connection with the purchase of their assets.

6. Your company is to assume all expenses in connection with its organization and the consummation of this offer.

Very truly yours,

(Signed)    HERMAN ADASKIN.

The offer was accepted by the stockholders and thereupon transfers were executed by Adaskin to the new corporation and the stockholders of the new corporation thereupon voted to issue to Adaskin $105,000 of its preferred stock and the number of shares of common stock agreed upon, which after allowing for a bonus of stock to remain in the treasury for the purposes stated in the offer amounted to $128,500. The vote was consummated by the actual delivery of the bill of sale transferring the assignment of the lease, etc., by Adaskin to the new corporation and the issuance to him of the stock so voted.

Adaskin, who had previously been made the president of Flint-Adaskin Furniture Co., thereupon stated that as a result of negotiations "between this company and Flint & Company, Incorporated, an opportunity was presented of purchasing all the property and assets of Flint & Company, Incorporated, of every kind and nature, wherever situated, real, personal and mixed, upon the assumption by this company of all contracts, indebtedness and other obligations of Flint and Company, Incorporated, in exchange for one thousand and seventy-five (1075) shares of the full paid and non-assessable common stock of Flint-Adaskin Furniture Company to said Flint and Company, Incorporated, or its nominees."

Upon motion duly made and seconded the following preambles and resolutions were thereupon unanimously adopted:

WHEREAS, Flint and Company, Incorporated, is prepared to transfer, sell and assign to this corporation all of its property and assets of every kind and nature, wherever situated, real, personal and mixed, upon the assumption by this corporation of all of its contracts, indebtedness and other obligations as

of the close of business on December 5, 1919 for the sum of one hundred seven thousand five hundred dollars ($107,500) to be paid in the full paid and non-assessable common capital stock of this corporation at par, to be issued to said Flint and Company, Incorporated, or to such person or persons as it may name; and

WHEREAS, in the judgment of this meeting said purchase upon the terms and conditions set forth is necessary for the purposes of this corporation and is of the full and clear value of one hundred seven thousand five hundred dollars ($107,500), and is a good and sufficient consideration for the shares of stock demanded therefor:

Now THEREFORE BE IT RESOLVED: That the treasurer be and he hereby is authorized to offer to consummate said purchase upon said terms and conditions by a letter in the following form:

PROVIDENCE, R. I.
*December 5, 1919.*

FLINT AND COMPANY, INCORPORATED,
*Providence, R. I.*

GENTLEMEN: This Company hereby offers to purchase from you all of your property and assets of every kind and nature, wherever situated, real, personal and mixed, and to assume all of your contracts, indebtedness and other obligations, as of the close of business on December 5, 1919, for the sum of one hundred seven thousand five hundred dollars ($107,500) payable to you or to such person or persons as you may name in the full paid and non-assessable common capital stock of this corporation.

We further agree in case this offer is accepted to make all proper and satisfactory arrangements to the end that an agreement for the voting control of said Flint-Adaskin Furniture Company shall be executed upon mutually satisfactory terms.

This offer will remain open for ten days from date, and if not then accepted shall cease and determine.

Awaiting your reply, we are

Very truly yours,

FLINT-ADASKIN FURNITURE COMPANY
(Signed)    By J. P. BARSTOW, *Treasurer.*

The books of account of the Anthony Furniture Co. at the close of business on December 5, 1919, showed the net worth of that company to be $111,732.45. The books of account of Flint & Co., Inc., at the same date had—

| | |
|---|---|
| Total assets | $187,532.20 |
| Total liabilities | 96,779.10 |
| Net worth | 90,753.10 |

The offer of Flint-Adaskin Furniture Co. to purchase the assets of Flint & Co., Inc., was acce, ed by the stockholders of the last named company at a stockholders' meeting, held immediately after the stockholders' meeting of Flint-Adaskin Furniture Co., and in due course the stockholders of Flint & Co., Inc., received 1,075 shares of common stock of Flint-Adaskin Furniture Co. in payment therefor.

Pursuant to the agreements reached on the evening of December 5, 1919, Adaskin turned over to the Flint-Adaskin Furniture Co. 140 shares of common stock to be held in the treasury of the corporation for use as bonus stock. Adaskin then turned over to the newly organized corporation $25,000 of preferred stock at par, receiving in payment therefor notes of the company. The corporation then issued 100 shares of preferred stock at par, with a bonus of 20 shares of common stock of Barstow Stove Co., in part payment of an account due it from Flint & Company, Inc. The first actual sales of stock of the new corporation were not made until April 1, 1920, at which time 60 shares of the preferred stock were sold at par, with a bonus of common stock at the rate of one share of common stock for each five shares of preferred stock.

The petitioner returned no income for the year 1919 resulting from these transactions. The Commissioner added to the net income reported $53,880.99, as profit upon the sale by Adaskin to the Flint-Adaskin Furniture Co., of assets acquired from the Anthony Furniture Co. at a cost of $105,000 in exchange for the stock received from the Flint-Adaskin Furniture Co. The computation by which he arrived at this profit was as follows:

| | | |
|---|---:|---:|
| Value of stock received | | $158,943.06 |
| Cost of assets transferred | $105,000.00 | |
| Cash payment to adjust | 62.07 | |
| | | 105,062.07 |
| Total profit | | 53,880.99 |

The value of the stock received by petitioner was determined by the Commissioner upon the basis of the combined net worth of the Anthony Furniture Co. and of Flint & Co., Inc., on December 5, 1919, plus certain adjustments. The fair market value of such stock at the date of receipt was $105,000.

### OPINION.

SMITH: The sole question involved in this proceeding is whether the petitioner realized taxable gain under the provisions of section 202(b) of the Revenue Act of 1918 in connection with certain transactions which took place on December 5, 1919. Section 202 of the Revenue Act of 1918 provides a basis for determining gain or loss in connection with certain transactions and reads in part as follows:

(b) When property is exchanged for other property, the property received in exchange shall for the purpose of determining gain or loss be treated as the equivalent of cash to the amount of its fair market value, if any * * *

Petitioner contends that he derived no taxable gain from the transactions outlined in the findings of fact; that the events which took

place on December 5, 1919, were separate and distinct transactions and that when the petitioner transferred to the Flint-Adaskin Furniture Co. certain assets for shares of stock of that company the Flint-Adaskin Furniture Co. had no assets whatever and that, therefore, the shares of stock received must be considered as having the same value as the assets turned in to the corporation for such shares of stock; that, even if the proof as to the separateness of the transactions was insufficient, nevertheless there is no proof that the fair market value of the shares of stock received by Adaskin on December 5, 1919, in exchange for the assets turned in for such shares of stock had a fair market value in excess of $105,000. The respondent on the other hand contends that at the time Adaskin transferred the assets to the Flint-Adaskin Furniture Co. for shares of stock there was an enforceable understanding between the parties concerned that the Flint-Adaskin Furniture Co. was to acquire the assets of Flint & Co., Inc., and was to issue in payment therefor only shares of its common stock and that the substance of the transaction is that the fair market value of the assets to be acquired by the Flint-Adaskin Furniture Co. was equal to the book value of the assets of the two concerns acquired, and that upon any reasonable basis of apportionment as between preferred stock and common stock the petitioner received shares of stock which had a market value in excess of $105,000.

The evidence plainly shows the successive steps to this transaction. The negotiations between Adaskin and the stockholders of Flint & Co., Inc., which took place prior to 6 p. m., December 5, 1919, in no wise operated to bind the Flint-Adaskin Furniture Co. The first meeting of the stockholders of the Flint-Adaskin Furniture Co. was at 6.30 p. m., on December 5, 1919.

Although the deponents all testified that there had been preliminary discussion and negotiations between all parties concerned with reference to Adaskin's known purpose in initiating the proceedings in question, namely to consolidate the Anthony Furniture Co. with Flint & Co., Inc., and to refinance them, and that to this end the Flint-Adaskin Furniture Co. had been incorporated and the meeting of the principal parties interested had been arranged for the evening of December 5, 1919, yet it is the uncontradicted testimony of all deponents that there was no actual agreement reached and no final action taken until after thorough discussion on the evening of December 5, 1919, and that not until after Adaskin had consummated his purchase of the Anthony Furniture Co.'s assets and transferred them to the Flint-Adaskin Furniture Co. was the stockholders' meeting of Flint & Co., Inc., held and the offer of the Flint-Adaskin Furniture Co. accepted. The transactions took place in Rhode

Island, and involved the transfer of the assets of two Rhode Island corporations to a third Rhode Island corporation, and are necessarily governed by and are to be interpreted in accordance with the law and decisions of the court of Rhode Island. On the point thus raised the Supreme Court of that State has twice had occasion to decide that an agreement purported to be made in behalf of a corporation before its organization is not binding upon nor enforceable by such corporation, at least until it has been adopted. In *Ireland* v. *Globe Milling & Reduction Co.* (1897) 20 R. I., 190; 38 Atl. 116, it definitely appeared that certain of the incorporators and proposed stockholders of a corporation to be organized agreed that no stockholder should sell his stock to any person without first giving the corporation an opportunity to purchase the same. The corporation was subsequently organized and stock subscribed for and issued. Some time later the plaintiff, a stockholder, sold some of his stock without first offering it for sale to the corporation itself. The corporation, basing its action on the above agreement between its incorporators, refused to transfer the stock upon its books and the plaintiff brough suit for damages for such refusal. The court held that admitting the agreement above described to have existed, it constituted no defense to the action in question since the corporation was not bound by and could not enforce the provisions of such contract.

In *Anderson* v. *Johnson* (1923) 45 R. I. 17; 119 Atl. 642, the Supreme Court of Rhode Island affirmed the decision in the *Globe Milling Co.* case and held that stock issued pursuant to an agreement between the promoters before the organization of the corporation, the issue of which was otherwise entirely unauthorized by vote of the stockholders or directors, was invalid, the court stating, citing the *Globe Milling Co.* case:

As the corporation was not in existence when the contract was made it was incapable of making the contract and the promoters had no authority to bind the corporation by any contract made by or between them.

That this is the law in substantially all jurisdictions is shown by the following :—

14 C. J. Corporation, Sec. 289, p. 255 and cases cited; Fletcher Cyc. Corporations, Sec. 150, p. 306 and cases cited.

In the case of *Plaquemines, etc. Co.* v. *Buck*, 52 N. J. Eq. 219, 27 Atl. 1094 (1893) the court said:

"No rights, legal or equitable, arise in favor of a corporation in respect to transactions, whether complete or inchoate, merely because entered into in contemplation of the creation of such corporation."

See also *Winters* v. *Hub Mining Co.* (1893) 57 Fed. 287; *Penn Match Co.* v. *Hapgood* (1886) 141 Mass. 145; 7 N. E. 22.

It would follow in the case at bar that even if there had been an agreement between either Flint & Co., Inc., or its stockholders

with Adaskin, made prior to the evening of December 5, 1919, such contract could not be imputed to the Flint-Adaskin Furniture Co. when made before its organization and so could not upon such organization be enforced by it.

Turning to the principal contention on behalf of the petitioner that the transactions in question, having taken the form of a series of distinct legal steps, must be so treated in connection with the determination of taxable gain or loss resulting therefrom, it appears that this position is fully supported by decisions of this Board. *Appeals of Edward A. Langenbach*, 2 B. T. A. 777; *West Point Investment Co.*, 1 B. T. A. 436; *Herbert E. Clayburgh*, 1 B. T. A. 573; *H. F. Kerr*, 5 B. T. A. 1073. Clearly, under the statute petitioner derived no gain from the sale of his assets to Flint-Adaskin Furniture Co. for shares of stock of that company unless the fair market value of the shares of stock received was in excess of the cost of the assets transferred, namely, $105,000. It is the contention of the respondent that the assets turned in by Adaskin were to be appraised and that the assets acquired from Flint & Co., Inc., were to be likewise appraised; that for any excess in the appraisal of the assets turned in by Adaskin over those acquired from Flint & Co., Inc., same was to be paid for by the issuance to Adaskin of additional shares of preferred stock. This we think proves no fair market value of the shares of stock received by Adaskin in excess of the $105,000 paid by him for the assets of the Anthony Furniture Co. Even if this were so, the appreciation in the value of Adaskin's shares is not taxable as income. The increment in value, if any, occurred after Adaskin had acquired his shares of stock, the value of which is here involved. Deponents, who were in position to know of the value of the preferred and common stock, testified that the value of the stock on December 5, 1919, was at most problematical. The earnings of the predecessor companies afford no basis for a contention that the value of the stock received by Adaskin was in excess of $105,000. It was, of course, believed by Adaskin and the others interested, that the Flint-Adaskin Furniture Co. could be operated at a profit. But only the future could tell.

From a consideration of the entire evidence we are of the opinion that the fair market value of the shares of stock received by Adaskin for the assets paid in was not in excess of $105,000 and that the petitioner derived no taxable income from the transaction.

Reviewed by the Board.

*Judgment will be entered on 15 days' notice, under Rule 50.*