MILTON TOOTLE, JR., PETITIONER, *v.* COMMISSIONER OF INTERNAL
REVENUE, RESPONDENT.

GRAHAM G. LACY, JR., PETITIONER, *v.* COMMISSIONER OF INTERNAL
REVENUE, RESPONDENT.

WILLIAM D. TOOTLE, PETITIONER, *v.* COMMISSIONER OF INTERNAL
REVENUE, RESPONDENT.

JOHN W. CRAVER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVE-
NUE, RESPONDENT.

GRAHAM G. LACY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVE-
NUE, RESPONDENT.

E. H. ZIMMERMAN, PETITIONER, *v.* COMMISSIONER OF INTERNAL
REVENUE, RESPONDENT.

HAL. Y. LEMON, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVE-
NUE, RESPONDENT.

MILTON TOOTLE, III, PETITIONER, *v.* COMMISSIONER OF INTERNAL
REVENUE, RESPONDENT.

Docket Nos. 34949, 36542, 39090, 39562, 39563, 39584, 39856, 44962.

Promulgated September 18, 1930.

*Richard L. Douglas, Esq.,* for the petitioners.
*L. A. Luce, Esq.,* for the respondent.

OPINION.

LANSDON: The respondent has asserted deficiencies in income tax
against the several petitioners in the following respective amounts:
Milton Tootle, Jr., Docket No. 34949, for the years 1923 and 1926,
$20.76 and $4,049.29; Graham G. Lacy, Jr., Docket No. 36542, for the
year 1926, $111.92; William D. Tootle, Docket No. 39090, for the year
1926, $1,621.90; John W. Craver, Docket No. 39562, for the year
1926, $7,813.17; Graham G. Lacy, Docket No. 39563, for the year
1926, $4,558.45; E. H. Zimmerman, Docket No. 39584, for the year
1926, $286.89; Hal. Y. Lemon, Docket No. 39856, for the year 1926,
$1,986.66; and Milton Tootle, III, for the year 1926, $1,355.49. In the
same deficiency notices each of the petitioners was advised that his

income tax for the year 1925 had been overpaid. The single issue, common to all the dockets, is whether a certain distribution paid to the stockholders of a corporation on December 15, 1925, was a regular dividend paid out of surplus and current earnings, or a liquidating dividend chargeable against the total net value of capital assets owned by such corporation at the date of the distribution in question. By agreement of counsel the several proceedings have been consolidated for hearing and decision.

The parties agree on the facts and have filed a stipulation with various exhibits attached, which the Board accepts and includes in the record as its findings of fact. The facts material to the issue here may be summarized as follows:

Each of the petitioners was an owner of no par value shares of common stock of the Aunt Jemima Mills Co., hereinafter called Jemima, a Delaware corporation with its principal place of business at St. Joseph, Mo., and each had acquired his stock prior to November 24, 1925, at a cost that is stipulated for the record.

On November 24, 1925, the stockholders of Jemima approved a contract to sell all its assets, except cash in bank and a claim for refund of Federal taxes, to the Quaker Oats Co., for a cash consideration in excess of $4,200,000, and within 12 months thereafter received the entire sale price. One of the terms of the contract of sale was that Jemima would liquidate and dissolve within one year.

At October 31, 1925, the balance sheet of Jemima showed surplus and undivided profits for the year to that date in the respective amounts of $506,879.03 and $363,296.97, or a total of $870,176. Included in the assets of that date was cash in the amount of $146,330.19.

On December 15, 1925, the directors of Jemima passed the following resolution:

WHEREAS, This corporation has sold to The Quaker Oats Company all of its property and assets except cash on hand and its claim or claims against the United States Government for a refund of taxes, and this corporation has agreed to liquidate its affairs and to dissolve; and

WHEREAS, it is estimated that the sum paid by The Quaker Oats Company for the properties and assets of the corporation, together with cash on hand and other assets, will be sufficient to pay to all holders of the non par value common stock of the corporation, not less than eighty dollars ($80) per share, and

WHEREAS, The Board of Directors of the corporation have called a meeting of its stockholders, to be held between the hours of ten o'clock A. M. and three o'clock P. M., on Friday, the 15th day of January, 1926, to convene at ten o'clock A. M., to consider the question of the final dissolution of the corporation and the distribution of its cash and the proceeds derived from its property and assets, after the payment of its debts, to its stockholders; and

WHEREAS, the corporation now has on hand an earned surplus and undivided profits sufficient to distribute therefrom to each share of said non par value common stock the sum of twenty-five dollars ($25) ; and

WHEREAS, the Board of Directors in their judgment deem it advisable and most for the benefit of the corporation that such distribution should be made as a part payment of the total sum to be paid to the holders of such stock by reason of the sale of the properties and assets of the corporation to The Quaker Oats Company and the dissolution of the corporation.

THEREFORE, RESOLVED, that the corporation distribute to the holders of its non par value common stock from its earned surplus the sum of twenty-five dollars ($25) per share for each and every share thereof, upon condition, however, that such distribution shall constitute a part of the payment to be made to the holders of the non par value common stock of the corporation by reason of the sale of its properties and assets to The Quaker Oats Company and the dissolution of the corporation.

RESOLVED, FURTHER, that the President and Secretary of the corporation prepare and mail to each and every holder of the non par value common stock of the corporation, at his or her last known place of residence a written or printed notice, advising them of the distribution to be made to the holders of such stock, and requesting such stockholders to forward their stock to the corporation or to some bank or agent in the City of St. Joseph, Missouri, in order that proper endorsement may be made thereon, when payment is made.

RESOLVED, FURTHER, that all payments made to the stockholders by virtue hereof shall be a part of the total amount to be paid to such stockholders by reason of the sale of the properties and assets of the corporation, from which, together with cash on hand and the proceeds from other assets of the corporation, it is estimated that the holders of non par value common stock will ultimately receive not less than eighty dollars ($80) per share for each and every share of such stock, and that no payments shall be made to any person or persons except stockholders of record at the time or times payments are actually made, and, unless and until the certificate or certificates evidencing such stock ownership shall be presented to the corporation, in order that proper endorsement of such payment or payments may be made thereon.

RESOLVED, FURTHER, that the President and Secretary of the corporation be, and they hereby are authorized and directed to pay, or cause to be paid, to the holders of the non par value common stock of the corporation, from its earned surplus, the sum of twenty-five dollars ($25) per share, by reason of the distribution hereby ordered, when and not until the certificate or certificates evidencing such stock shall be presented to the corporation and endorsed as follows :

> There has been paid upon this certificate the sum of twenty-five dollars ($25) for each and every share of non par value common stock of Aunt Jemima Company evidenced by such certificate, pursuant to a distribution ordered by the Board of Directors of said corporation on the 15th day of December, 1925, said distribution being a part of the total sum to be paid to the holders of common stock by reason of the sale of the corporation's properties and assets to the Quaker. Oats Company and the final dissolution of the corporation.

Pursuant to the above resolution the holders of the no par value common stock of Jemima, then outstanding to the number of 33,273 shares, received the amount of $25 per share in cash and each stock certificate was presented and endorsed as required by the resolution.

On January 15, 1926, the stockholders of Jemima passed the following resolution:

WHEREAS, it appears that the Board of Directors of Aunt Jemima Mills Company at a meeting of said Board held on the 15th day of December, 1925, by resolution then adopted, declared that in their judgment they deemed it advisable and most for the benefit of the corporation that it should be dissolved, that its debts should be paid and that the remainder of its cash and the proceeds derived from the sale of its properties and assets should be distributed to its stockholders and the business of the corporation finally liquidated; and

WHEREAS, it further appears that said Board of Directors have called this special meeting of its stockholders to take action upon the resolution adopted by the Board of Directors, and for the purpose of having the stockholders vote upon the question of dissolving the corporation, and for the further purpose of having said stockholders consent in writing to said dissolution; and

WHEREAS, the stockholders also deem it advisable and most for the benefit of the corporation that it should be dissolved and liquidated, as provided in said resolution of the Board of Directors, as the same appears in the minutes of the Directors' meeting held on the 15th day of December, 1925.

THEREFORE, RESOLVED, that the corporation be dissolved and its affairs liquidated, and that the Directors and proper officers of the corporation be, and they are hereby authorized and directed to take such action in all respects as may be necessary and proper to dissolve the corporation, to pay its debts and to distribute the remainder of its cash and the proceeds derived from the sale of its properties and assets to its stockholders, in accordance with their respective rights as such stockholders, and

RESOLVED, FURTHER, that the stockholders of the corporation hereby consent to the dissolution of the corporation and the liquidation of its affairs in the manner and for the purposes herein and in said resolution of the Board of Directors provided.

On January 15, 1926, the directors of Jemima passed the following resolution:

RESOLVED, That the corporation does hereby declare a liquidation dividend of fifty dollars ($50) per share, payable to the holders of the non par value common stock of the corporation as soon as a certificate shall be issued by the State of Delaware, declaring the corporation to be dissolved, and as soon as the balance due to the corporation from The Quaker Oats Company shall be paid; and that the President, Secretary, Treasurer, and other proper officers of the corporation be, and they hereby are authorized and directed to pay to the holders of said non par value common stock the sum of fifty dollars ($50) upon each and every share of said non par value common stock issued and outstanding. as such liquidation dividend, as soon as the certificate of the dissolution of the corporation shall be issued by the State of Delaware and the balance due to the corporation by The Quaker Oats Company shall have been paid; provided, however, that no payment shall be made upon any certificate of stock until such stock shall be presented at the office of the corporation in St. Joseph, Missouri, and until there shall be endorsed thereon the following certificate of payment, to wit:

There has been paid on this date, upon each and every share of stock evidenced by this certificate the sum of fifty dollars ($50) as a liquidation dividend.

Dated at St. Joseph, Missouri, this          day of          1926.

On June 1, 1926, the directors of Jemima passed the following resolution:

RESOLVED: That the corporation hereby declare a liquidation dividend of Three Dollars and Fifty Cents ($3.50) per share, payable to the holders of the non par value common stock of the corporation, and that the President, Secretary, Treasurer, and other proper officers of the corporation be, and they hereby are, authorized and directed to pay to the holders of said non par value common stock the sum of Three Dollars and Fifty Cents ($3.50) upon each and every share of said non par value common stock issued and outstanding, as such liquidation dividend; provided, however, that no payment shall be made upon any certificate of stock until such stock shall be presented at the office of the corporation in St. Joseph, Missouri, and until there shall be endorsed thereon the following certificate of payment, to wit:

There has been paid on this date upon each and every share of stock evidenced by this certificate, the sum of Three Dollars and Fifty Cents ($3.50) as a liquidation dividend.

The payments authorized by the resolutions of January 15 and June 1, 1926, were duly made.

In their respective income-tax returns for the year 1925, each of the petitioners included in his gross income the distribution of $25 per share received on December 15 of such year as a regular dividend of a domestic corporation subject to surtax only. For the year 1926, each of the petitioners reported the distributions received on January 15 and June 1 as liquidating dividends and that part of such dividends in excess of the cost of stock as profit. Upon audit of the returns of the several petitioners for the years 1925 and 1926, the Commissioner held that the distributions of December 15, 1925, and of January 15 and June 1, 1926, were all in the nature of liquidating dividends and determined overassessments for the year 1925 and deficiencies for the year 1926, upon the basis of the total distributions less the cost of stock.

The petitioners contest the overassessments and deficiencies asserted by the Commissioner and as a basis for their contention assert that the distribution made on December 15, 1925, was a regular dividend payable from surplus and undivided profits which, they allege, were ample for that purpose. The respondent has ruled that such distribution was, in fact, a liquidating dividend, which, together with admitted liquidating dividends paid in the following year, should be compared with the cost of the stock in order to determine the taxable gains realized by each of the petitioners in 1926. The contract of sale, the action of the directors of Jemima on December 12, and the language of the resolution adopted on December 15, 1925, all tend to support the action of the respondent. Counsel for petitioner argues that at December 15, 1925, Jemima was still a going concern and that at such date no steps looking to liquidation and

dissolution had been taken, that no such steps were taken until in January, 1926, and that Jemima had ample surplus with which to make the payment of $25 per share on the common stock.

We are unable to agree with the argument of petitioners' counsel and are of the opinion that the facts and the law support the position of the respondent. The contract to sell the assets of Jemima was ratified by the stockholders on November 24, 1925. Thereafter, that concern was not engaged in any business operations other than to comply with the terms of the contract of sale and liquidate and dissolve within one year from that date. The resolution adopted on December 15 speaks for itself. The directors had informed the stockholders that in the event of the sale the no par value shares of common stock would have an asset value of at least $80 per share. The stockholders were told in almost so many words that if the sale went through their stock would be liquidated at not less than $80 per share. The resolution recites and each stockholder was required to acknowledge by an appropriate endorsement of his certificate that the payment received on December 15, was a part of the not less than $80 per share which he had been told theretofore was the liquidating value of his stock.

Nor is it clear that the distribution of $25 per share was paid out of surplus on hand at October 31. The record shows that on that date there was a book surplus of $870,176, but only $146,330.19 thereof was in cash. The assets included in such surplus in the amount of $724,845.81 were sold to the Quaker Oats Co. and a large cash payment was received therefor prior to December 15, 1925. It would seem to follow, therefore, that the major part of the distribution of $25 per share on that date was actually paid with cash realized from the sale of the entire assets of the corporation. We believe that the Commissioner properly held that the payment of December 15, 1925, was the first step in the liquidation of the common stock of Jemima.

In his brief the petitioners' counsel relies on our decision in *E. G. Perry et al.*, 9 B. T. A. 796. In that case the distribution in question was not only made before any steps looking to liquidation had been taken, but before the assets of the corporation had been sold. In the instant proceeding, all the assets of Jemima had been sold and delivered and the stockholders, after being informed that after the sale their shares would have a liquidating value of not less than $80, had ratified the contract to sell, which carried with it the obligation to liquidate and dissolve. The *Perry* case established no rule applicable to the situation here. *S. B. Dandridge et al.*, 11 B. T. A. 421, is quite similar in its facts to the proceedings here under considera-

tion. In that case we concluded our opinion with the following words, which seem peculiarly applicable to these proceedings:

\* \* \* Whether we look to the situation that existed when the dividend was declared or at the time it was paid, it is clear that the distribution of surplus and profits was not merely in anticipation of liquidation and dissolution, but was a step taken while the corporation was in the process of liquidation and dissolution and is a liquidating dividend subject to both surtax and normal tax. *Langstaff* v. *Lucas*, 13 Fed. (2d) 1022; 5 Am. Fed. Tax. Rep. 6125; *Hellmich* v. *Hellman*, 276 U. S. 233; *John K. Greenwood*, 1 B. T. A. 291; *E. T. Renfro et al.*, 8 B. T. A. 1295.

Counsel also argues that, as a matter of equity, the distribution of December 15, 1925, should be regarded as a regular dividend, since the payments then made were from earned surplus upon which Jemima had already paid a Federal income tax, and that the procedure adopted by the Commissioner must, therefore, result in double taxation. This argument is without weight, since we regard the whole transaction as within the provisions of section 201 (c) of the Revenue Act of 1926, which is as follows:

Amounts distributed in complete liquidation of a corporation shall be treated as in full payment in exchange for the stock, and amounts distributed in partial liquidation of a corporation shall be treated as in part or full payment in exchange for the stock. The gain or loss to the distributee resulting from such exchange shall be determined under section 202, but shall be recognized only to the extent provided in section 203. In the case of amounts distributed in partial liquidation (other than a distribution within the provisions of subdivision (g) of section 203 of stock or securities in connection with a reorganization) the part of such distribution which is properly chargeable to capital account shall not be considered a distribution of earnings or profits within the meaning of subdivision (b) of this section for the purpose of determining the taxability of subsequent distributions by the corporation.

In *Hellmich* v. *Hellman*, *supra*, the Supreme Court considered the matter of double taxation resulting from the application of 201 (c) upon situations similar to the circumstances herein, and decided adversely to the contention of the taxpayer. In that decision the court said:

The gains realized by the stockholders from the distribution of assets in liquidation, were subject to the normal tax in like manner as if they had sold their stock to third persons. The objection that this results in double taxation of the accumulated earnings and profits is no more available in the one case than it would have been in the other. See *Merchants L. T. Co.* v. *Smietanka*, 255 U. S. 509; *Goodrich* v. *Edwards*, 255 U. S. 527. When as here, Congress has clearly expressed its intention, the statute must be sustained, even though double taxation results. See *Patton* v. *Brady*, 184 U. S. 608; *Cream of Wheat Co.* v. *Grand Forks*, 253 U. S. 325, 330.

The Board is without authority to review the Commissioner's determination of overassessments and overpayments for the year 1925. *Cornelius Cotton Mills*, 4 B. T. A. 255.

*Decision will be entered for the respondent.*