JAMES P. GOSSETT, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

SALLIE BROWN GOSSETT, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 43038, 43049.    Promulgated April 23, 1931.

*James Craig Peacock, Esq.*, for the petitioners.
*Otis J. Tall, Esq.*, for the respondent.

OPINION.

STERNHAGEN: By virtue of the directors' resolution of December 15, 1925, the petitioners as shareholders of the corporation received in 1925, $3,000 and $13,100, respectively, indicating that they were the owners of 60 shares and 262 shares, respectively. The respondent in determining the deficiencies advised each of the petitioners that "Your contention that the dividend received in 1925 from the Brogon Mill was not a liquidating dividend has been denied. You are advised that this office has consistently held that the dividend distributed by the Brogon Mill December 21, 1925, was a liquidating dividend inasmuch as the resolution to dissolve and liquidate the corporation had been previously adopted."

The Revenue Act of 1926 governs, Title II thereof being, by section 286, effective January 1, 1925. The controlling sections are sections 201 and 202 and related sections, prescribing in some detail the treatment of distributions by corporations. For present purposes, it is enough to say that dividends as defined are, by section

216, credited for the purpose of normal tax and, therefore, measure only the surtax; while amounts distributed in liquidation are treated as sale price of shares with consequent gain or loss to measure both normal and surtax. The petitioners contend that the 50 per cent distribution was a dividend in 1925, while respondent defends his determination that this distribution and those subsequently made were in liquidation.

We must first dispose of the contention of petitioners that the reason stated by respondent in the notice of deficiency is inadequate to support the determination and that, therefore, the determination is not fortified by the usual presumption of correctness. The respondent held the distribution to be in liquidation "inasmuch as the resolution to dissolve and liquidate had been previously adopted." Petitioner urges that in *W. E. Guild*, 19 B. T. A. 1186, the Board held that the prior resolution to dissolve was not controlling of the statutory category of the distribution, and that this takes the ground out from under the determination and deprives the determination of its favorable presumption. The Board has consistently held that the subject matter of the proceeding before it is the tax liability of the petitioner. When a deficiency is determined, the reasons given do not constitute or confine the issues. *Edgar M. Carnrick*, 21 B. T. A. 12, 21. The petitioner may in his petition assail the deficiency for reasons not theretofore suggested and may go so far as thereby to convert the deficiency into an overpayment, and the respondent may, on the other hand, defend on new grounds, and the Board has jurisdiction to increase the deficiency. *Altschul Tobacco Co.* v. *Commissioner*, 42 Fed. (2d) 609; *Francisco Sugar Co.* v. *Commissioner*, 47 Fed. (2d) 555. The primary issue is the correctness of the ultimate determination of deficiency, and the ordinary presumption is not destroyed by the reason given, even if it be unsound or badly expressed.

From the evidence it appears clear that sale, liquidation and dissolution were the dominating considerations of the corporation from the time of the offer of the Appleton Company to buy the business. Whatever was done thereafter was not in ordinary course of carrying on the business for current profit. With the acceptance of the offer on October 13, 1925, the program of winding up the business and dissolving the corporation began. The question, however, is whether such general considerations are a sufficient test of the nature of this distribution. If they are, there can be little doubt that it was a distribution in liquidation, for it was but a step in the process of giving to shareholders the entire assets and ending the business. It was not an ordinary or a regular dividend,

for it exceeded not only the usual annual rate of 8 per cent, but also the entire earnings of the current fiscal period. Nor was it merely an "extra" dividend from enlarged or accumulated earnings, because the fund from which it was paid was the cash received as the sale price of its plant. All of the general circumstances characterize the distribution as one in liquidation.

But petitioner argues that there are legal considerations requiring that for our present purpose it be regarded as a dividend not in liquidation. These considerations are, that it is like the dividends in the *Guild* case, *supra*, which were held to be not in liquidation, and unlike those in other cases held to be in liquidation; that it did not impair capital and no shares were retired; that it was not called a liquidation distribution although the later ones were; that since the mere resolution to dissolve is not enough in South Carolina to bring about dissolution, liquidation was not in process. Furthermore, it is argued that this is not such a liquidation distribution as is contemplated by the Revenue Act of 1926, however it might be under the Revenue Act of 1918, involved in prior decisions.

The *Guild* case is, we think, clearly distinguishable. From all the numerous circumstances there in evidence, it was apparent that the intention of 1915 to liquidate and dissolve was later changed, and that at the time of the dividends several years later the corporation was carrying on business for its own sake and earning currently the profits distributed. The dividends were not incidental to a continuing purpose to wind up the business, for the purpose itself was discontinued and business was flourishing. Here the business was sold, there was a continuing purpose to dissolve, and the corporation's activities were at one with this purpose. Although petitioner emphasizes its business in Lad-Lassie cloth over a period of several months, including the purchase and sale of a substantial quantity of new material, we do not regard this as inconsistent with winding up its affairs. It is palpably different in genesis and scope from the revival of business shown in the *Guild* case and is not sufficient to indicate a departure from the plan of liquidation. On the contrary, the disposition of finished goods and goods in process was embodied in the contract containing the offer of purchase and the agreement to dissolve and was within the contemplation of the plan.

In *E. G. Perry*, 9 B. T. A. 796, the dividend was declared before there was a resolution to dissolve, and the Board held that the inference of an intention to liquidate existing at the time of the dividend was not enough to stamp the dividend as a liquidation distribution. It should be readily apparent that a mere intention to dissolve, before its manifestation, could not be taken as the test. While it

may be fair to say that a dividend declared before the first official step in dissolution will generally be regarded as not in liquidation, such a proposition still leaves open the question whether a subsequent distribution is of one class or the other.

The question whether the particular distribution reduced the amount of assets below the par value of outstanding shares—" impaired capital "—is not determinative of its character. Nor is the corporation's own designation in its resolutions. Here the corporation, being in process of liquidation and dissolution from October 13, 1925, called its first distribution of 50 per cent simply a dividend, while those subsequently declared were called liquidating dividends. It is not stated when these distributions began to invade capital nor is it readily ascertainable from the evidence. If this were decisive, it would require an analysis of asset values to determine the effect of each distribution and consequent controversy far beyond the reasonable intendment of the statute. It would then result that all distributions above the total par value of shares would be taxed as dividends and thus the statute itself would be stultified. Such an interpretation must be rejected, and for the same reason is it immaterial whether at the time of the distribution all or any part of the shares were surrendered or retired.

Obviously the South Carolina statute requiring the filing of the resolution with the secretary of state to complete dissolution has no significance in the present issue. The issue here is not whether dissolution was complete in 1925. Clearly it was not. The issue is only whether the distribution of 1925 is subject to one or the other measure of Federal income tax by reason of the circumstances in which it is found. Furthermore, the decision on that tax question contains no intimation, as petitioners suggest, that the corporation improperly exercised its powers in its declaration or description of the distribution.

The petitioners contend that the definition of distribution in liquidation of the Revenue Act of 1926 by its terms excludes the one at bar. We are, however, for reasons already stated, of opinion that the distribution was " one of a series in complete cancellation or redemption of all or a portion of its stock " and, therefore, within section 201(h). This is in harmony with prior decisions. *E. G. Perry*, 9 B. T. A. 796; *S. B. Dandridge*, 11 B. T. A. 421; *Deposit Trust & Savings Bank, Executor*, 11 B. T. A. 706; *S. J. Blumenthal*, 12 B. T. A. 1205; *W. E. Guild et al.*, 19 B. T. A. 1186; *Milton Tootle, Jr., et al.*, 20 B. T. A. 892; *Canal-Commercial National Bank*, 22 B. T. A. 541.

A word may be added to demonstrate further that the distribution of 1925 was an intentional part of liquidation. The shareholders

agreed that in liquidation the nonmachinery group of 8,910 shares were to get more than their *pro rata* share and the machinery group of 4,306 shares were to get less, the measure of the former being a hypothetical sale price of $1,200,000 or $100,000 more than the actual price. Although all the figures for an accurate computation are not in evidence, such as there are indicate to a fair assurance that this plan was fulfilled only by including the December, 1925, distribution among those of the plan of liquidation.

*Judgment will be entered under Rule 50.*