## H. H. CHAMPLIN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 22486.    Promulgated June 6, 1933.

*Harry O. Glasser, Esq.,* for the petitioner.
*P. M. Clark, Esq.,* and *C. C. Holmes, Esq.,* for the respondent.

**OPINION.**

STERNHAGEN: 1. The first issue has been settled by the parties. The Commissioner had allowed the petitioner a deduction of $10,000 for salary, which petitioner claimed was inadequate and should be increased to $25,000. This the Commissioner now concedes, and thus removes the issue from consideration.

2. The petitioner contends that during all of the period in question the income from the oil and refining business inured to a partnership which existed by agreement between him and his wife. The respondent denies the partnership. In our opinion, the evidence fails to establish that such a partnership existed.

It has been held that in tax cases a claim of partnership between husband and wife must be carefully scrutinized, and is not to be lightly allowed. *James L. Robertson*, 20 B.T.A. 112; *W. M. Buchanan*, 20 B.T.A. 210; *J. Howard Coombs*, 20 B.T.A. 1021; cf. *Burnet v. Leininger*, 285 U.S. 136; *Leonard M. Gunderson*, 23 B.T.A. 45; *D. Morton Rose, Administrator*, 22 B.T.A. 1334; (65 Fed. (2d) 616); *Elizabeth M. Coombs*, 25 B.T.A. 1320; *J. W. Brackman*, 24 B.T.A. 259. While, in Oklahoma it may be, as the petitioner contends, that a husband and wife may properly form a partnership, and that such state law would be controlling (but see *Burk-Waggoner Oil Assn. v. Hopkins*, 269 U.S. 110; *Burnet v. Leininger, supra*), the question here is whether the evidence is sufficient to establish such a partnership in fact. We are unable to find that it does. The wife merely contributed some of her own funds to the petitioner to be used in the acquisition and operation of the lease, being at the same time aware that the venture might prove unsuccessful and that her contribution might thus be lost. Nothing more was understood as to a partnership relation, either

between themselves or by anyone else who did business with the petitioner. The wife had no authority to participate either in the management or the responsibilities of the business, and she never attempted to exercise any. The business was conducted entirely by the petitioner and in his own name. No distribution of profits was ever made to the wife. Under these circumstances the petitioner properly omitted to file partnership returns for 1917 and 1918, and the fact that such returns were improperly filed for 1919 and 1920 and the resulting tax was distributively paid by both, adds nothing to demonstrate the existence of a partnership.

3. The petitioner contends that for 1920 the Commissioner erroneously charged him with gain resulting from the exchange by him of the assets of his business, including the Beggs lease, for shares of the newly organized Champlin Refining Co. He contends that the transaction was within section 202 (b), Revenue Act of 1918,[1] and that the shares received had no fair market value and thus the transaction involved no gain. The evidence offered to support this point is misconceived. It is directed not so much to the actual fair market value of the shares received as it is to the effect of the title litigation upon the scope of the market for the Beggs lease. Since the opening balance sheet shows that the corporation's shares were backed not alone by the Beggs lease, but also by the substantial value of various other apparently unrelated assets, there would still be value in the shares even if it could be said that the Beggs lease was itself without fair market value. *H. H. Blumenthal*, 21 B.T.A. 901. The balance sheet indicates that such assets included cash $196,000, accounts receivable $150,000, refinery $319,000, tank cars $447,000, and other items, all aggregating over $1,500,000. Nothing in the record indicates that this valuation was inflated. There is therefore no basis for a finding that the shares had no substantial fair market value.

The parties have stipulated that, except for the effect of the litigation upon the petitioner's rights under the Beggs lease, the lease

---

[1] SEC. 202. (b) When property is exchanged for other property, the property received in exchange shall for the purpose of determining gain or loss be treated as the equivalent of cash to the amount of its fair market value, if any; but when in connection with the reorganization, merger, or consolidation of a corporation a person receives in place of stock or securities owned by him new stock or securities of no greater aggregate par or face value, no gain or loss shall be deemed to occur from the exchange, and the new stock or securities received shall be treated as taking the place of the stock, securities, or property exchanged.

When in the case of any such reorganization, merger or consolidation the aggregate par or face value of the new stock or securities received is in excess of the aggregate par or face value of the stock or securities exchanged, a like amount in par or face value of the new stock or securities received shall be treated as taking the place of the stock or securities exchanged, and the amount of the excess in par or face value shall be treated as a gain to the extent that the fair market value of the new stock or securities is greater than the cost (or if acquired prior to March 1, 1913, the fair market value as of that date) of the stock or securities exchanged.

was worth $1,530,000. This figure is substantially less than the aggregate discovery values of the eight wells which were brought in on the property prior to the incorporation, upon which substantial depletion deductions had been claimed and allowed. Throughout the litigation the petitioner and the corporation were successively in possession of and actually engaged in operating the property, and during this period the petitioner's right to operate and retain the proceeds was never sufficiently in doubt to impel the court by the appointment of a receiver or otherwise to restrict his use of either the property or the proceeds. One witness thought that the petitioner's chance of ultimate success in the litigation was one out of three. The witness translated this and other facts into a value for the lease while under the cloud amounting to " $400,000 or $500,000." Another witness thought that the major oil companies would not be interested in buying either the petitioner's shares or the leasehold, and this he translated into an opinion that the leasehold and shares were unmarketable and without fair market value. His opinion of the value of the sound right under the lease was $750,000, which is one half of the value stipulated. As a matter of fact, no attempt was made by the petitioner or the corporation at any time to sell either the lease or the shares, and evidence of actual effect upon the market is not available. The opinions of the witnesses are conjectural estimates, cf. *Buena Vista Land & Development Co.* v. *Lucas*, 41 Fed. (2d) 131, and, as we have said, relate primarily not to the corporate shares but to the controverted lease.

The corporation which the petitioner organized accounted for the leasehold at a total depleted value of $1,147,500. The respondent, having agreed with the petitioner that the sound, unclouded title to the lease was worth $1,530,000, recognized that the pendency of the title litigation served to diminish such market value and he determined the value thus diminished to be 25 percent less, or $1,147,500, which is the same figure appearing as the opening entry upon the corporation's books. We are unable, after a full consideration of the evidence, to say that this determination overstates the fair market value of the lease or that the fair market value of the corporation's shares was less than the Commissioner's figure, which reflected the inclusion among the corporation's assets of the Beggs lease at $1,147,500.

4. The respondent raises an alternative issue as to the depletion allowance if his valuation be overruled. Since the valuation is sustained, there is no occasion to consider this alternative issue, there being no claim for an increase in the deficiency.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*

SMITH, dissenting: I do not agree with the majority holding that the taxpayer *realized* a gain upon the incorporation of his oil business. Section 202 (b) of the Revenue Act of 1918 provides that upon an exchange of property "the property received * * * shall * * * be treated as the equivalent of cash to the amount of its *fair market value, if any.*" There is no warrant in the statute for resorting to the intrinsic value of the assets of the new corporation in determining the "fair market value, if any," of its stock. The statute uses terms connoting a concourse of willing buyers and willing sellers. The evidence of record discloses that there were neither sales nor offers to buy or sell; that there was a cloud upon the title of the petitioner to the Beggs lease; and that there was no market for the stock in 1920. In these circumstances I do not see how it can be said that the shares of stock had a fair market value. In my opinion there was no realized gain taxable as income to Champlin. See *O'Meara* v. *Commissioner* (C.C.A., 10th Cir.), 34 Fed. (2d) 390; *Schoenheit* v. *Lucas* (C.C.A., 4th Cir.), 44 Fed. (2d) 476; *Mount* v. *Commissioner* (C.C.A., 2d Cir.), 48 Fed. (2d) 550, wherein similar transactions have been held to result in no taxable gain.