HOLMBY CORPORATION, PETITIONER, v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 51303. Promulgated August 15, 1933.

*A. Calder Mackay, Esq.*, and *Thomas R. Dempsey, Esq.*, for the petitioner.

*Alva C. Baird, Esq.*, for the respondent.

1094

## OPINION.

BLACK. The problem here is to determine the correct amount of either a gain or a loss upon the liquidation of the old company, which was completed on or about December 24, 1926, at which time it was disincorporated and petitioner, a holding corporation, received $5,010,293.09. The problem involves two questions—(1) whether the two distributions authorized on the 10th and 17th of November, 1926, and amounting in the aggregate to $3,073,775.03, were either " amounts distributed in complete liquidation " or " amounts distributed in partial liquidation " as those terms are used in section 201 (c) and as the latter term is defined in section 201 (h) of the Revenue Act of 1926, or whether such distributions were ordinary dividends as the term " dividend " is defined in section 201 (a) of the same act; and (2) whether the respondent erred in determining the cost to petitioner of the 30,000 shares of The Broadway Department Store purchased by it on or about August 1, 1922. The applicable sections of the Revenue Act of 1926 are set out in the margin.[1] There is no dispute between the parties in regard to the amount of $5,010,293.09 received by petitioner on December 24, 1926, being a distribution in the liquidation of a corporation, and hence within section 201 (c), *supra;* or in regard to the full amount of either a gain or a loss, whichever it may be, being recognizable under section 203 without the application of any of the several exceptions mentioned therein.

As set out in our findings the petitioner in its return claimed a loss of $1,191,201.91 on the ground that the two dividends declared on November 10, 1926, and November 17, 1926, were ordinary dividends within the meaning of the term " dividend " as defined in section 201 (a) of the statute, and that the cost to it of the 30,000 shares of The Broadway Department Store was $99.41 per share, or $2,982,300, because of the applicability to the transaction of section 204 (a) (8) of the Revenue Act of 1926, whereas the respondent accepted the petitioner's statement as to the cost of the 30,000 shares

---

[1] SEC. 201. (a) The term " dividend " when used in this title * * * means any distribution made by a corporation to its shareholders, whether in money or in other property, out of its earnings or profits accumulated after February 28, 1913.

* * * * * * *

(c) Amounts distributed in complete liquidation of a corporation shall be treated as in full payment in exchange for the stock, and amounts distributed in partial liquidation of a corporation shall be treated as in part or full payment in exchange for the stock. The gain or loss to the distributee resulting from such exchange shall be determined under section 202, but shall be recognized only to the extent provided in section 203. * * *

* * * * * * *

(h) As used in this section the term " amounts distributed in partial liquidation " means a distribution by a corporation in complete cancellation or redemption of a part of its stock, or one of a series of distributions in complete cancellation or redemption of all or a portion of its stock.

but determined that the two dividends "were but steps in a plan of complete liquidation * * * within the meaning of section 201 (c) of the Revenue Act of 1926" and that instead of a loss, petitioner realized a profit of $1,882,573.12.

Petitioner contends, as has already been stated, that the two dividends in question were ordinary dividends and within section 201 (a), and now contends that the cost to it of the 30,000 shares of The Broadway Department Store on or about August 1, 1922, was $135 per share, or $4,050,000, instead of the $99.41 used by petitioner in its income tax return. This latter contention is based on the claim that petitioner erred when it treated the transaction as coming within the provisions of section 204 (a) (8), Revenue Act of 1926. Petitioner now contends that because of the parenthetical clause in section 204 (a) (8), viz., "(other than stock or securities in a corporation a party to a reorganization)", the transaction did not fall within the scope of section 204 (a) (8) and hence the basis for gain or loss of these 30,000 shares of stock in The Broadway Department Store is their cost to petitioner.

Petitioner's contention that section 204 (a) (8), Revenue Act of 1926, does not apply, and that cost to petitioner of the stock in the old company should be the basis for gain or loss in final liquidation, is sustained. *Stires Corp.*, 28 B.T.A. 1.

Petitioner contends that on this basis of cost it sustained a loss on the liquidation of The Broadway Department Store of $2,258,-901.91, computed as follows:

| | |
|---|---|
| Cost of 30,000 shares at $135 per share | $4,050,000.00 |
| Cost 19,995 shares at $161 per share | 3,219,195.00 |
| Total cost of all shares | 7,269,195.00 |
| Amount received on or about Dec. 24, 1926 | 5,010,293.09 |
| Loss on liquidation | 2,258,901.91 |

If petitioner is correct in both its contentions, it has overpaid its taxes for the year in question in a considerable amount. If petitioner is wrong in its contention as to the dividend issue, but is right as to the issue of the cost basis of the 30,000 shares of stock in the old company, there is a deficiency, but not in as large an amount as has been determined by respondent.

We shall first consider question number (1) as stated in the opening paragraph of this opinion.

A distribution may come within the broad definition of a "dividend" as defined in section 201(a), *supra*, and yet at the same time be the very transaction specifically provided for in section 201(c) of the statute. *Langstaff* v. *Lucas*, 9 Fed. (2d) 691; affd., 13 Fed. (2d) 1022; *Hellmich* v. *Hellman*, 276 U.S. 233.

Petitioner in support of its contention that the two distributions in question were ordinary rather than liquidating dividends, relies primarily upon the fact that no resolution of the stockholders to dissolve the corporation had been adopted until November 22, 1926, which date was subsequent to the date of declaration of the two dividends, citing *E. G. Perry*, 9 B.T.A. 796, and *Deposit Trust & Savings Bank, Executor*, 11 B.T.A. 706. We pause to say that both those decisions were prior to the decision of the Supreme Court in *Hellmich* v. *Hellman, supra*, and most of the other Board and court cases hereinafter cited, and we do not think they should be longer followed.

We have held that resolutions of stockholders or directors of a corporation to liquidate the corporation as soon as it could be done economically or that " there be and hereby is declared a liquidating dividend " does not necessarily stamp such or subsequent distributions with the name of liquidating dividends, if they are not such in fact. See *W. E. Guild*, 19 B.T.A. 1186; *Estate of Rudolph F. Rabe, Sr.*, 25 B.T.A. 1242. In the latter case we said " In determining the nature of a distribution, the facts of the case control." In the former case we also said:

Liquidation is not a technical status which can be assumed or discarded at will by a corporation by the adoption of a resolution by its stockholders, but an existing condition brought about by affirmative action, the normal and necessary result of which is the winding up of the corporate business.

In *Milton Tootle, Jr.*, 20 B.T.A. 892, a certain dividend of $25 per share, declared on December 15, 1925, after the corporation had on November 24, 1925, sold all of its assets except cash and a certain refund claim, and had agreed with the purchaser to liquidate within one year, but *before any formal resolution to dissolve had been adopted*, was held to constitute " the first step in the liquidation " of the corporation. We there distinguished the *Perry* case as establishing no rule applicable to such a situation. In affirming the Board, the Eighth Circuit, at 58 Fed. (2d) 576, 580, said in part:

The second heading of the argument is that this could not logically be treated as a distribution in liquidation, " since no corporate action for dissolution had been taken." It is contended that a corporation cannot be " in dissolution " until after corporate action to that end by a stockholders' meeting properly convened. Without close examination, and solely for the purpose of this controversy, it might be conceded that a corporation is not " in dissolution " until proper action therefor has been taken as required by the governing law. This does not help petitioners. Whatever complaint, if any, the State of Delaware or interested creditors might have made is not of concern here. The question here is not what the corporation could do but what it did. It may or may not be that the corporation could not legally distribute its assets until after it had complied with certain requirements of its parent state, but it did do that very thing, and when it did so it created the situation to which the national taxing statute directly applied.

In *Canal-Commercial Trust & Savings Bank* v. *Commissioner*, 63 Fed. (2d) 619; affirming 22 B.T.A. 541, the Fifth Circuit, in holding a certain distribution to be one in liquidation, rather than an ordinary dividend, said:

Proceedings actually begun to dissolve the corporation or formal action taken to liquidate it are but evidentiary and not indispensable. *Tootle* v. *Commissioner*, 58 Fed. (2d) 576.

Again, the court, in commenting upon the fact that the dividend in question was paid out of surplus instead of capital, said:

The fact that the distribution is wholly from surplus and not from capital, and therefore lawful as a dividend is only evidence. In *Hellmich* v. *Hellman*, and *Tootle* v. *Commissioner*, *supra*, the distribution was wholly from profits yet held to be one in liquidation.

Petitioner in its brief contends that because the bill of sale was not signed by all the parties until November 20, 1926, the actual sale did not take place until that time. We do not think it is important to the question we have here to decide, to determine whether the sale of assets by the old company to the new company was completed when the bill of sale was signed and delivered, November 20, 1926, or when the option to purchase was exercised, October 29, 1926. The question we have to decide is not the question of when the sale was completed (the tax here involved is not one laid on that particular transaction), but whether the two dividends in question were declared in the ordinary course of business with intent to maintain the old company as a going concern or as a part of a plan to quit business and liquidate its remaining assets. Cf. *Canal-Commercial Trust & Saving Bank* v. *Commissioner*, *supra*.

In *Gossett* v. *Commissioner*, 59 Fed. (2d) 365, affirming 22 B.T.A. 1279, the court said:

Certainly at the time of the payment of the dividend in question the corporation was not a going concern, in the legal sense, as its dissolution was already under way. It makes no difference what the directors called it when the dividend was declared, nor does the fact that subsequent dividends were termed "liquidating" dividends when this particular dividend was not so termed alter its character. The question of whether it was a "partial liquidating dividend" is to be determined, not from what it was called, but by the facts as shown by the record. The record shows that it was a very unusual dividend, and entirely outside of the due course of the business of the corporation.

The decision of the Commissioner and the Board that it was a "partial liquidating" dividend was clearly right * * *.

The dividend in the *Gossett* case was declared after the stockholders had passed a resolution to dissolve, but, as we have already shown, such resolutions are only evidentiary and not indispensable. *Canal-Commercial Trust & Savings Bank* v. *Commissioner*, *supra*.

At the time the distributions in the instant case were authorized the distributing company had sold the major portion of its assets,

including the business, good will, and corporate name, and simultaneously with the declaration of the second distribution in question, its board of directors authorized the sale to petitioner of the remaining assets of The Broadway Department Store. The dividends could not have been paid until part of the selling price had been received. The dividend of $50 per share, declared November 10, 1926, was paid for the most part out of the first money received from the sale of the assets under the contract with Dillon, Read & Co. Cf. *Tootle* v. *Commissioner, supra.*

In a matter of this kind the whole of the transactions must be viewed together from the beginning to the end, and in this view of the transactions we hold that each of the two distributions in question was distributed " in partial liquidation of a corporation " as that term is used in section 201 (c), *supra,* and defined in subdivision (h) of the same section as being " one of a series of distributions in complete cancellation or redemption of all " of the stock of The Broadway Department Store, which " cancellation or redemption " occurred on or about December 24, 1926, at which time all the remaining assets were distributed and the corporation was disincorporated by duly constituted proceedings in law.

Consideration will now be given to question number (2) as stated in the opening paragraph of this opinion.

On or about August 1, 1922, petitioner issued 79,788 shares of its authorized capital stock of 80,000 shares to Arthur Letts and assumed liabilities in the amount of $601,600 in exchange for shares of various corporations enumerated in our findings of fact. Among these shares were 30,000 shares of The Broadway Department Store. What was the cost to petitioner of these 30,000 shares? It is apparent from the statement attached to petitioner's return that had it not been for petitioner's misconception of the applicability of section 204 (a) (8) of the Revenue Act of 1926, it would have claimed a cost of $4,050,000 or $135 per share; but, thinking that section applicable, it claimed only a cost of $2,982,300, or $99.41 per share (cost to transferor, Arthur Letts). The latter amount was accepted by the respondent as the cost of the stock in his determination of the deficiency. The respondent's determination is prima facie correct and the burden of disproving it is upon petitioner. *Austin Co.* v. *Commissioner,* 35 Fed. (2d) 910; *Wickwire* v. *Reinecke,* 275 U.S. 101.

In *Seymour Mfg. Co.,* 19 B.T.A. 1280, 1285, we said: " The cost of property acquired for stock is the ' fair market value ' of the stock." To the same effect see *Bay City Fuel Co.,* 20 B.T.A. 450; *Hershey Mfg. Co.,* 14 B.T.A. 867, 872. In order, therefore, to determine the cost to petitioner of the 30,000 shares of The Broadway Department Store, the proper procedure would be to determine the

fair market value of petitioner's 79,788 shares of stock on the basic date, and then determine how many of such shares were issued for the 30,000 shares of the old company. The latter factor may be ascertained from the allocation made by petitioner on its books in 1922, which is set out in full in our findings. It was stipulated that the transaction was set up on petitioner's books in the manner indicated in our findings of fact and there is nothing in the record to suggest that these values thus placed on petitioner's books were inflated. Cf. *H. H. Champlin*, 28 B.T.A. 264; *H. H. Blumenthal*, 21 B.T.A. 901.

There were no sales of petitioner's stock (Holmby Corporation) at or about the basic date. The stock was closely held and not traded on any exchange or over the counter market. Under such circumstances it is proper to consider evidence tending to prove the fair market value, if any, of the assets acquired by petitioner. *Ambassador Petroleum Co.*, 28 B.T.A. 868; *Commissioner* v. *Swenson*, 56 Fed. (2d) 544; *Melville Hanscom et al., Executors*, 24 B.T.A. 173; *Herman Adaskin*, 8 B.T.A. 460. Cf. also *Walls* v. *Commissioner*, 60 Fed. (2d) 347; *Mount* v. *Commissioner*, 48 Fed. (2d) 550; *Patterson* v. *Commissioner*, 42 Fed. (2d) 148; *O'Meara* v. *Commissioner*, 34 Fed. (2d) 390; and *Mead Realty Co.*, 21 B.T.A. 1062.

We think that the evidence fully supports petitioner's claim that the stock of the old company had a fair market value at the time it was acquired by petitioner in 1922 of $135 per share. The principal witness who testified on this point was Malcolm McNaughten. He was president of the new company and vice president of the old company, and was a director in petitioner. He testified that his opinion was that the stock of the old company had a fair market value of $135 a share on August 1, 1922, and that he believed this valuation was conservative. He testified that his opinion as to value was based on the fact that the book value of the tangible assets underlying the shares at that date was $125 per share; that the average net earnings of the corporation during the preceding four years were $13 per share and that the net earnings for 1922 were about $20 per share.

In view of these facts, which were not contradicted by any evidence introduced by respondent, it is not difficult to believe that the stock of the old company had a fair market value of $135 per share at the basic date and that the stock of the Holmby Corporation (petitioner) was worth par, the price for which it was issued in payment of the 30,000 shares of stock in The Broadway Department Store (here involved) and other assets not involved in this proceeding.

As to the value of petitioner's stock, the witness McNaughten testified in part as follows:

Q. Did the stock of the Holmby Corporation have a fair market value at the time of issue?
A. I have definitely considered it worth par, or $100 a share.
Q. In your opinion, it was worth $100 a share?
A. Yes.

It is not difficult to believe that stock in the largest and one of the best known department stores in Los Angeles, with an earning power of $13 per share for the four years prior to the year of sale and with earnings of $20 in the year of sale, and with $125 worth of tangible assets behind each share, had a fair market value of $135 per share on the date in question. We think this valuation is confirmed by the fact that four years later the entire stock of the old company was liquidated at a price of upwards of $161 per share ($8,084,068.12 which we hold was the amount received in liquidation divided by 49,995 shares, the amount of stock owned by the petitioner in The Broadway Department Store at the time of its liquidation in 1926).

Accordingly, respondent, in a redetermination of the profit resulting from the liquidation of these particular 30,000 shares of stock in 1926, should use as a basis of cost thereof the sum of $135 per share.

Reviewed by the Board.

*Decision will be entered under Rule 50.*