NORTH AMERICAN TELEGRAPH CO. v. NORTHERN PAC. RY. CO.

(Circuit Court of Appeals, Eighth Circuit. November 11, 1918.)

No. 5013.

1. EMINENT DOMAIN ⊜═202(2, 3)—DAMAGES—EVIDENCE.

In a proceeding to condemn a right of way for a telegraph pole line on a railroad right of way, *held*, that evidence of the rental paid for similar easements was admissible on the question of damages, and, while it is not to be used as a mathematical formula, witnesses were properly allowed to state what such rental would amount to, if capitalized at 4½ to 5½ per cent.

2. EMINENT DOMAIN ⊜═202(2, 3)—DAMAGES—EVIDENCE—"MARKET VALUE."

The expression "market value" indicates the price established in a market where the article is dealt in by such a number of persons as to standardize the price; but as applied to real property the term indicates fair or reasonable value, which the property would have if dealt with as at a market overt. So in a proceeding to condemn a right of way for a telegraph line over a railroad right of way, the price for which rights of way over other railroads were acquired is not admitted to fix the market value except in the latter sense.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Market Value.]

In Error to the District Court of the United States for the District of Minnesota; Page Morris, Judge.

Condemnation proceeding by the North American Telegraph Company against the Northern Pacific Railway Company. There was judgment on the verdict, assessing damages in the sum of $16,850, and plaintiff brings error. Affirmed.

E. T. Young and O'Brien, Young, Stone & Horn, all of St. Paul, Minn., for plaintiff in error.

D. F. Lyons, of St. Paul, Minn. (C. W. Bunn, of St. Paul, Minn., on the brief), for defendant in error.

Before HOOK and CARLAND, Circuit Judges, and AMIDON, District Judge.

AMIDON, District Judge. This is a proceeding brought by the North American Telegraph Company as plaintiff to condemn a right of way for a telegraph pole line on the railroad right of way of the defendant, the Northern Pacific Railway Company, from White Bear to Duluth, Minn., a distance of 138 miles, and from White Bear to Stillwater, a distance of 12 miles, under section 6246 of the General Statutes of Minnesota for 1913. The case was before this court and was carefully examined in an opinion reported in 230 Fed. 347, 144 C. C. A. 489, L. R. A. 1916E, 572. The decision of the trial court was there reversed, because it failed to receive evidence which we deemed necessary to show the true value of the property, and because the rule of damages adopted was erroneous. On the second trial the rejected evidence was received, and the rule of damages formulated

by this court was stated, with explanations which gave plaintiff no cause for exception. The jury returned a verdict for $16,850, upon which judgment was entered, and plaintiff brings error.

[1] The only exceptions urged in argument of sufficient merit to require mention are these: Mr. Baker, superintendent of the Postal Telegraph Company, testified that he had acquired at the price of $10 per mile, rights over several Southern and Southwestern railroads identical with those sought by plaintiff. Counsel insists that this practice established a "market value" for the right, to which the jury should have been restricted, and excepted to the use of any other standard. The trial court also received, over plaintiff's objection, evidence of witnesses produced by defendant of the annual rental paid for such easements for limited terms of years, and then permitted the witnesses to state what that rental would amount to if capitalized at 4½ to 5½ per cent. Counsel insists that such a valuation would be proper only in case the fee to the property was taken; and, as the statute provides that plaintiff's right is subject to termination whenever the property shall be needed by the railway company for its own purposes, it is urged that the reception of this evidence was highly prejudicial. We might content ourselves by simply referring to our opinion when the case was here before. We then stated that rental value was a proper element for consideration in assessing damages. For the reasons there given, we still adhere to that opinion. As we then explained, such a valuation is not to be used as a mathematical formula. It should be qualified by the limited nature of the right, and that was clearly done by the trial judge. It then constituted one of the most valuable elements for the consideration of the jury.

[2] The term "market value," as the words fairly import, indicates price established in a market where the article is dealt in by such a multitude of persons, and such a large number of transactions, as to standardize the price. Proof of such a market value can only be made by one of the recognized methods of proving the price current in a market. Individual dealings are not competent to prove it. The term is, however, frequently used in a figurative sense, as meaning the fair or reasonable value of the property—that is, such a value as the property would have if it were dealt in according to the practices of a market overt. This is the meaning which the term usually has when applied to real property. To prove market value when it is used in this secondary or figurative sense, it is proper to receive evidence of individual transactions, even offers made in good faith for property of like character, the nature of the property, its location, its rental value, the uses to which it can be put, and all the manifold elements which are admissible to show the fair and reasonable value of property which is not so traded in as to give it a market value in the primary sense of the term. Private dealings in property can never be used to show market value in the primary sense, and, when used to show market value in the sense of fair and reasonable value, individual transactions can never be made the sole basis for ascertaining such value. No text-writer or court has been discovered which supports any such doctrine. The distinction between the two meanings attached

to the term "market value" is now found in the elementary works. Chamberlayne on Evidence, §§ 2099h, 2099i.

When the matter under investigation is so exceptional as the right involved in the present case, to try to fit it into the formula of "market value" leads only to confusion. In such a case all that can be done is to aid the jury by the opinions of men who are shown to have opinions which will prove, in the judgment of the trial court, a help to the jury, and to present the various features of the property to which we have already referred. The elements which witnesses may properly bring forward in such a case are those which experienced and intelligent business men would present, if they were negotiating with respect to the property in question. Boom Co. v. Patterson, 98 U. S. 403, 25 L. Ed. 206; United States v. Chandler-Dunbar Co., 229 U. S. 53, 77, 33 Sup. Ct. 667, 57 L. Ed. 1063. When the minds of jurymen have been enlightened by such evidence and opinions, their composite judgment constitutes the "fair compensation" referred to in our Constitutions. Judges cannot properly make a schedule of the elements, which may be brought before a jury by experienced men to aid them in making their assessments. The rule and the elements for its application must be adapted to the subject matter that is under investigation. That is what was done by this court in its opinion when the case was here before. The Circuit Court of Appeals of the Sixth Circuit, after a careful examination of the same subject, has recently approved the same method. Louisville & Nashville R. R. Co. v. Western Union Telegraph Co., 249 Fed. 385, —— C. C. A. ——.

The judgment is affirmed.