ANITA OWENS HOFFER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

T. B. HOFFER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 33374, 33375. Promulgated September 16, 1931.

*J. S. Y. Ivins, Esq.*, and *Harold C. Anderson, C. P. A.*, for the petitioners.

*F. R. Shearer, Esq.*, and *E. L. Corbin, Esq.*, for the respondent.

OPINION.

SMITH: The first allegation of error raises issues relating to the basic value of four oil leases and the manner in which these leases were acquired. No proof as to the value of the leases was offered and the petitioners concede the correctness of the respondent's affirmative allegation that, in computing the profit upon the sale of the leases, the Barnes lease had been erroneously valued at $30,225 instead of $30,000, as claimed by the petitioners and determined by the respondent. With this correction, the respondent's determination of the value of the four leases is sustained.

The petitioners alleged that these four leases were acquired by petitioner T. B. Hoffer by gift. The respondent admitted that the Robinson lease was so acquired. At the hearing no proof was offered on this point and counsel for the respondent disclaimed " any intention to increase Mr. Hoffer's income on account of receipt by gift of any of these leases." No affirmative issue having been raised on this point, we will not disturb the respondent's treatment of the entire profit realized upon the sale of these leases as community income.

The remaining allegations of error put at issue the fair market value of the shares of the Fensland Oil Company stock received upon the sale of certain properties to the Fensland Oil Company and others. The petitioners claimed that the stock had a fair market value of $4 per share. The Commissioner has determined a fair market value of $13.50 per share, but concedes that since the transaction with Johnston was not consummated and the 300 shares of stock were not received until September, 1920, the quoted price on the stock at that time indicates a value of only $12.50 per share. The petitioners agree that " the Curb Market quotations were unquestionably fair indications of the market value of the 300 share block," but insist that such quotations do not indicate the fair market value of the 12,000 share block. Further, with reference to the value of the stock given to Mrs. Hoffer, the petitioners take the position that the " Curb Market quotations reflecting prices for small blocks probably came much nearer a true index of the value of 1,500 shares than it did of a value for 12,000 shares." The petitioners apparently are willing to accept

the Curb Market quotations as indicative of the fair market value of the 300 and 1,500 shares of this stock, but contend that these quotations are not indicative of the fair market value of a block of 12,000 shares.

In disposing of the issue as it relates to the 12,000 shares of stock, we must first determine the basic date for valuing that stock. The respondent has based his determination upon August 3, 1920, the date when Hoffer received the certificates for these shares of stock. We think this was in error. At or about June 19, 1920, the taxpayer vendor transferred the property sold to the vendee, completing his part of the transaction, and thereafter was entitled to receive the consideration. There is nothing in the record to indicate that the vendor could not have obtained delivery of the entire consideration at or about that time. The fact that the certificates for the 12,000 shares of the Fensland Oil Company stock were not delivered to Hoffer until August 3, 1920, does not affect his ownership of the stock. His interest vested prior to the delivery of the certificates. *Galbraith* v. *McDonald*, 123 Minn. 208; 143 N. W. 353; *Richardson* v. *Shaw*, 209 U. S. 365. The certificates were only evidence of the ownership of the shares, *Jellenick* v. *Huron Copper Mining Co.*, 177 U. S. 1, and of a capital interest in the corporation, *Eisner* v. *Macomber*, 252 U. S. 189, 208. As the Supreme Court said in *Harriman* v. *Northern Securities Co.*, 197 U. S. 244, 294, the certificates are but " a muniment of the holder's title to a proportionate interest in the corporate estate vested in the corporation." Regardless of when the taxpayer received the stock certificates, the sale was made on or about June 19, 1920, and the stock, a part of the consideration for the property sold, should be valued as of that date. Cf. *Clara Brunton, Executrix*, 15 B. T. A. 348; affd., 42 Fed. (2d.) 81; certiorari denied, 282 U. S. 889; *Charles W. Dahlinger*, 20 B. T. A. 176; affd., 51 Fed. (2d) 662; *Lucas* v. *North Texas Lumber Co.*, 281 U. S. 11.

The fair market value of stock at a basic date is a question of fact, to be determined from all the circumstances of the case. In *Walter* v. *Duffy*, 287 Fed. 41, 45, the Circuit Court of Appeals for the Third Circuit said:

Now, what is the market price? What is the fair market price of the statute? We say " fair," since every word used by Congress must be given due effect in the construction of this widely applicable statute, for obviously, while a stock might be bought and sold—and so marketed—and might thus be said to evidence some market price, yet it is obvious that Congress by the addition of the words " fair market price," certainly meant that not only must the market price be ascertained by sales, but that sales so made, the circumstances under which they were made, the subject-matter of the sales, all the attendant circumstances, were to be considered to determine whether such sales served to

evidence not alone a market sale, but the fair price which Congress said should be the statutory start or base from which subsequent "gain derived" should be determined.

In *Heiner* v. *Crosby*, 24 Fed. (2d) 191, 193, is the following:

The fair market price or value of stock at a particular time is a question of fact, to be determined from all the circumstances. Market price implies the existence of a market, of supply and demand, of sellers and buyers. Sales are always evidence of a market price, but the statute requires that, in "ascertaining the gain derived from the sale," there must be not simply a "market price," but a "fair market price." Sales made at a particular time and place may be significant, but the price paid is not necessarily decisive of fair market price or value. The fact of sales, in itself and without regard to the circumstances under which the sales were made, does not conclusively establish either statutory fair market price or value. Sales made under peculiar and unusual circumstances, such as sales of small lots, forced sales, and sales in a restricted market, may neither signify a fair market price or value, nor serve as the basis on which to determine the amount of gain derived from the sale. In such cases resort must be had to evidence to determine "fair value." Offers made in good faith and opinions of intelligent men experienced in the business are admissible to show fair value. *Louisville & Nashville R. R. Co.* v. *Western Union Telegraph Co.* (C. C. A.) 249 F. 385; *North American Telegraph Co.* v. *Northern Pacific Railway Co.* (C. C. A.) 254 F. 417; *Walter* v. *Duffy* (C. C. A.) 287 F. 41; *Boom Co.* v. *Patterson*, 98 U. S. 403, 25 L. Ed. 206; *United States* v. *Chandler-Dunbar Co.*, 229 U. S. 53, 77, 33 S. Ct. 667, 57 L. Ed. 1063.

See also *Phillips* v. *United States*, 12 Fed. (2d) 598.

The petitioners attacked the value determined by the respondent from quotations of sales on the New York Curb Market and offered testimony to show that these quotations of sales in small blocks were not indicative of the fair market value of the block of 12,000 shares. This witness was connected with the brokerage firm that organized the Fensland Oil Company and was conversant with the condition of that company in 1919; for many years he had dealt in oil stocks. In his opinion a block of 12,000 shares could not have been sold for more than $5 per share. There were no sales of this stock near the basic date at such a price. In addition to those reported on the New York Curb Market, there were sales of 6,000 shares at $6.75 per share in May, 1920, to Smithers & Company, and 3,000 shares at prices ranging from $13.50 to $14.125 per share in October, 1920, by Mrs. Hoffer through Smithers & Company.

While the opinion evidence offered is entitled to weight and must be given consideration, we are not concluded thereby. *Boggs & Buhl* v. *Commissioner*, 34 Fed. (2d) 859. The opinion as to value is based on a consideration of assets behind the stock, which were much more valuable in the summer of 1920 than in the fall of 1919, when there were sales of this stock at $5 per share on the New York Curb Market. These sales were in comparatively small blocks of

stock, but unlike the sales involved in the cases cited by the petitioners (*Francis E. Smith*, 1 B. T. A. 868; *Fruen Investment Co.*, 2 B. T. A. 542; *Automatic Transportation Co.*, 3 B. T. A. 505; *Kennedy Construction Co.*, 4 B. T. A. 276; *Stollwerck Chocolate Co.*, 4 B. T. A. 467; *Charles F. Ayer*, 7 B. T. A. 324; *Frederick H. Zeigen*, 10 B. T. A. 844; *C. A. Bryan*, 19 B. T. A. 111) were fairly constant over a long period of time and at gradually ascending prices, perhaps reflecting the development of the assets behind the stock.

As we said in *James Couzens*, 11 B. T. A. 1040, 1165:

\* \* \* The facts and circumstances must be fully known in each case, together with any available evidence of their interrelation and importance, and from this in its entirety the independent judgment of the Board must be derived.

The record indicates a value for this stock greater than that claimed by the taxpayers. There were sales over a long period of time at greater prices. The petitioners' witness stated that the assets behind the stock had more tangible value in the summer of 1920, when the lowest quoted price was $8 per share on sales in the month of June, than in the fall of 1919, when there were sales at the price claimed. Under the circumstances we believe that the reported sales more nearly reflect the fair market value of this stock than does the opinion evidence. With due allowance for the number of shares involved, we are of the opinion that the fair market value of the 12,000 shares of Fensland Oil Company stock at the basic date was $8 per share.

The parties are in agreement that the transaction with Johnston was consummated in September, 1920. The taxpayers apparently accept the Curb Market quotations as indicative of the fair market value of the 300 shares of stock received at that time, and the respondent concedes that, based upon those quotations, the value should be $12.50 per share instead of $13.50 per share as originally determined. We hold accordingly.

In October, 1920, Mrs. Hoffer sold 3,000 shares of the Fensland Oil Company stock, upon which the respondent has determined a profit of $11,880. This stock had been acquired by Mr. Hoffer as community property and on July 15, 1920, he transferred his undivided one-half interest therein to Mrs. Hoffer by gift. In determining the deficiencies the respondent treated the profit upon this sale as community income, but now affirmatively alleges that the profit was the separate income of Mrs. Hoffer. The stock was the separate property of Mrs. Hoffer when sold and the gain realized therefrom was her separate income. See *Oscar Chesson*, 22 B. T. A. 818; and G. C. M. 8209, Cumulative Bulletin IX–2, p. 326. It will not be necessary to discuss the respondent's alternative allegation on this point. *Judgment will be entered under Rule 50.*