AMBASSADOR PETROLEUM COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 40039. Promulgated August 8, 1933.

*George Bouchard*, *Esq.*, and *Joseph D. Brady*, *Esq.*, for the petitioner.

*J. M. Leinenkugel*, *Esq.*, *R. W. Wilson*, *Esq.*, and *Charles R. Vorck*, *Esq.*, for the respondent.

OPINION.

BLACK: We are asked to determine the amount of petitioner's net loss, if any, for the taxable year 1924 which petitioner seeks to deduct from its net income for the year 1925, and the amount of depletion deductible from petitioner's gross income for the year 1925. These are the only two issues in this proceeding.

The parties have stipulated that if petitioner sustained a loss on the abandonment of its leasehold interest in parcel A in excess of $23,817.11, then and in that event it sustained a net loss within the

meaning of section 206 of the Revenue Act of 1924, in the amount of such excess.

In his deficiency notice the respondent determined that petitioner sustained a loss on the abandonment of its leasehold interest in parcel A in the amount of $15,000, and stated in part:

Lease was acquired * * * for $15,000.00 cash and an issuance of 105,000 of its own capital stock. The stock, having no market value and not having been issued until August 14, 1923, the only amount allowable as a deduction from gross income on the abandonment of the lease is the cash paid for same * * *.

Petitioner contends that the 105,000 shares of its capital stock given in part payment for the leasehold interest had a fair market value of at least $166,666.66 and that its loss due to the abandonment of the lease was $181,666.66 instead of $15,000 determined by the respondent.

Under section 204 (a) of the Revenue Act of 1924, the basis for determining the loss here claimed is the cost of the property abandoned. In *Seymour Mfg. Co.*, 19 B.T.A. 1280, we said: " The cost of property acquired for stock is the ' fair market value ' of the stock."

What was the fair market value in 1920, at the time parcel A was acquired, of the 105,000 shares which petitioner obligated itself to issue to the Wilshire Oil Co.? Respondent makes the point that the stock was not actually issued until August 14, 1923, but we see nothing important about that. In this connection see *Anita Owens Hoffer*, 24 B.T.A. 22, 27.

As far as the record shows, the only assets acquired by petitioner at the time of organization were the three leasehold interests in parcels A, B and C. There were no sales of petitioner's stock at or about the basic date, other than petitioner's agreement to issue 315,000 shares for the three leases, and the 700 shares originally subscribed and sold for $1 per share. Under such circumstances it is proper to consider evidence tending to prove the fair market value, if any, of the leases on the date acquired by petitioner. *Commissioner* v. *Swenson*, 56 Fed. (2d) 544; *Melville Hanscom et al., Executors*, 24 B.T.A. 173; *Herman Adaskin*, 8 B.T.A. 460. Cf. also *Walls* v. *Commissioner*, 60 Fed. (2d) 347; *Mount* v. *Commissioner*, 48 Fed. (2d) 550; *Patterson* v. *Commissioner*, 42 Fed. (2d) 148; *O'Meara* v. *Commissioner*, 34 Fed. (2d) 390; and *Mead Realty Co.*, 21 B.T.A. 1062.

We have examined the evidence carefully and, on the basis of the fair market value of the lease (parcel A) on the date acquired, we find the fair market value of the stock contracted to be issued for the lease was $1 per share, which was its par value. This makes the cost of the lease in question $105,000 paid in stock plus $15,000 which was paid the seller in cash.

This corresponds with the way petitioner returned the transaction for taxation purposes in 1924 and we think is well supported by the facts.

At the hearing petitioner introduced the testimony of two witnesses to show that the lease on all three tracts, A, B and C, 165 acres in all, had a fair market value of $500,000 at the time they were transferred to petitioner and that one third of this amount, or $166,666.67, was properly allocable to tract A, abandoned in 1924. We are not convinced by this testimony. We are convinced that, considering the location of tract A with reference to the original discovery well in the Santa Fe Springs Oil Field and the other wells which were being drilled at that time in nearby outlying territory, the demand for oil leases and all other relevant circumstances, the lease in question was worth what was paid for it; viz., $15,000 in cash and 105,000 shares of stock of petitioner, of a par value of $1 per share, which we hold had an actual value of $1 per share.

The Corporation Commission of the State of California authorized petitioner to issue 105,000 shares of its stock of the par value of $1 per share for the lease in question plus the $15,000 which was to be paid in cash, and we are satisfied that this estimate by the Corporation Commission of the valuation was reasonably correct at the time. Subsequent events proved that the three leases taken together had a value greatly in excess of the $500,000 claimed by petitioner as of the basic date, but it is not subsequent events from which we are to determine value at the basic date. If that were true, then we should find that tract A had no value because it ultimately proved to be worthless and was entirely abandoned in 1924, whereas tract C, on which the producing wells were subsequently brought in, proved to be of great value.

It is by the conditions and known facts which existed in 1920 that we must judge to find our valuation in 1920, and, applying that test, we are of the opinion that petitioner treated the cost of parcel A correctly in its income tax return for 1924, viz., a cost of $120,000. Petitioner's net loss for 1924 should be determined accordingly.

The second issue is whether the respondent erred in determining that petitioner's deduction for percentage depletion was limited under section 204 (c) (2) of the Revenue Act of 1926 (quoted in the margin [1]) to the amount of $73,745.41. The respondent's computation is set out in our findings.

---

[1] Sec. 204 (c) (2). In the case of oil and gas wells the allowance for depletion shall be 27½ per centum of the gross income from the property during the taxable year. Such allowance shall not exceed 50 per centum of the net income of the taxpayer (computed without allowance for depletion) from the property, except that in no case shall the depletion allowance be less than it would be if computed without reference to this paragraph.

Petitioner does not contend that the depletion allowance determined by the respondent is " less than it would be if computed without reference to " section 204 (c) (2), *supra*, and that it should, therefore, be determined under section 234 (a) (8) of the same act. Both parties agree that petitioner's depletion allowance should be determined under section 204 (c) (2), *supra*, but it is petitioner's contention that in determining the " net income of the taxpayer (computed without allowance for depletion) from the property," the respondent erred in deducting development expenses in the amount of $91,883.28.

The Revenue Act of 1926 eliminated so called discovery depletion entirely as far as oil and gas wells were concerned and substituted in its place the percentage depletion of 27½ percent subject to the limitation already stated. The regulations promulgated under the 1926 Act continued the provisions granting an election to either capitalize or deduct as a development expense all expenditures in connection with the exploration and development of properties,[2] and defined [3] the phrase " net income " as used in section 204 (c) (2), as follows:

> * * * The phrase " net income of the taxpayer (computed without allowance for depletion)" means the gross income from the sale of all mineral products from the mining property and any other income incidental to the operation of the property for the production of mineral products, *less the deductions in respect to the property* upon which the discovery is made, including *operating expenses, depreciation, taxes, losses sustained, etc.*, but excluding any allowance for depletion. * * * [Italics supplied.]

On September 26, 1927, the respondent published an opinion by the General Counsel of the Bureau of Internal Revenue, known as G.C.M. 2315 (VI-2 C.B. 21), the material portion of which is set out in the margin.[4]

Section 114 (b) (3) of the Revenue Acts of 1928 and 1932 is identically the same as section 204 (c) (2) of the Revenue Act of 1926

---

[2] See art. 223, Regulations 69, and I.T. 2338, VI-1 C.B. 74.

[3] Art. 201 (h), Regulations 69. See also art. 1602, Regulations 69.

[4] Shortly after the enactment of the Revenue Act of 1921, the construction of the proviso inserted in section 234 (a) 9 of the Act that the "depletion allowance based on discovery value shall not exceed the net income, computed without allowance for depletion, from the property upon which the discovery is made" was given consideration by the Bureau, and the decision was reached that the "net income from the property" referred to in the proviso should be computed without regard to development expenditures; that is, that development expenditures should not be treated as a deduction in computing the "net income from the property" regardless of whether the taxpayer corporation under article 223 of Regulations 62 elected to treat such expenditures as operating expenses deductible in computing taxable income or to charge them to capital returnable through depletion. In view of the decision made at that time, the fact that it has been uniformly followed in closing a great number of cases, and the desirability of a consistent administration of the provision in question, the conclusion is reached that in applying the limitation on discovery depletion in the case of oil and gas wells provided for in section 234 (a) 9 of the Revenue Act of 1921, the gross income from a discovery property should not be reduced by development expenditures in the computation of the "net income from the property," which amount measures the maximum depletion

(see footnote No. 1), except that the Revenue Act of 1932 added at the close of the first sentence the phrase "excluding from such gross income an amount equal to any rents or royalties paid or incurred by the taxpayer in respect of the property."

It has been the consistent practice of petitioner since its organization to elect to deduct from its statutory gross income in determining its statutory net income all "development expenses" as ordinary and necessary business expenses.

It is petitioner's contention that the administrative practice of the respondent in construing the provisos limiting discovery depletion in the Revenue Acts of 1921 and 1924 to mean that the "net income from the property" should be computed without regard to development expenditures regardless of whether the taxpayer elected to treat such expenditures as ordinary and necessary business expenses or to charge them to capital, must be deemed as having received legislative approval by Congress in the reenactment by Congress of a similar proviso limiting percentage depletion in the Revenue Act of 1926; and that, therefore, the ruling in G.C.M. 2315, *supra*, is in error in so far as it holds that in determining the "net income of the taxpayer (computed without allowance for depletion) from the property" under section 204 (c) (2) of the 1926 Act, development expenditures must be deducted in those cases where the taxpayer has elected to treat such development expenditures as ordinary and necessary business expenses deductible from statutory gross income in determining statutory net income under other sections of the act. See *Brewster* v. *Gage*, 280 U.S. 327; *Murphy Oil Co.* v. *Burnet*, 287 U.S. 299; and *United States* v. *Dakota-Montana Oil Co.*, 288 U.S. 459. Petitioner further contends that in any event the respondent's construction of the earlier acts is the correct construction for the reason that Congress could never have intended the "net income * * * from the property" to have one meaning

allowance based on discovery which can be allowed in respect to such property. A like construction should be followed in applying the provisions of section 214 (a) 10 of the Revenue Act of 1921 and the provisions of section 204 (c) of the Revenue Act of 1924. The latter section restricts a depletion allowance based on discovery value to "50 per centum of the net income (computed without allowance for depletion) from the property upon which the discovery is made."

The construction herein adopted relative to discovery depletion in the case of oil and gas wells under the 1921 and 1924 Acts should be confined to those Acts. Under section 204 (c) 2 of the Revenue Act of 1926, provision is made that in the case of oil and gas wells the allowance for depletion based upon the gross income from the property "shall not exceed 50 per centum of the net income of the taxpayer (computed without allowance for depletion) from the property." The term "net income" as used in that section should be taken to mean the net income defined in sections 212 and 232 of the Act. Accordingly, if a taxpayer elects to treat development expenditures as ordinary and necessary business expenses deductible under section 214 (a) 1 or 234 (a) 1 in computing taxable net income, such expenditures must be deductible in determining the net income from the property, which amount is used as a limitation in the computation of the depletion allowance based on income.

for taxpayers who elect to capitalize development expenditures and an entirely different meaning for taxpayers who elected to deduct from statutory gross income such expenditures as ordinary and necessary business expenses.

We do not feel that we are called upon in this proceeding to decide whether or not the Commissioner's regulations dealing with discovery depletion under the 1921 and 1924 Acts and his consistent practice with reference thereto, were correctly interpretative of the law as written in these acts. The act we have here for interpretation is the 1926 Act, which abandoned discovery depletion so far as oil and gas wells are concerned and substituted a flat percentage basis of depletion, subject to a limitation. This limitation was that the percentage allowance for depletion should in no case exceed 50 per centum of the net income of the taxpayer (computed without allowance for depletion) from the property, etc. This section 204 (c) (2), although it contained some of the same language used in prior acts in defining discovery depletion, was an entirely new provision and naturally called for new interpretative regulations on the part of the Commissioner of Internal Revenue.

The Commissioner has construed the words " The net income of the taxpayer from the property " contained in section 204 (c) (2), Revenue Act of 1926, to mean that if a taxpayer elects to treat development expenditures as ordinary and necessary business expenses deductible under section 214 (a) (1) or section 234 (a) (1) of the same act in computing taxable income from the property, such expenditures must be deducted in determining the net income from the property, which amount is used as a limitation in the computation of the depletion allowance based on income. As we have already pointed out, the provisions as to percentage depletion deductions granted in the case of income from oil and gas wells are substantially the same in the 1928 and 1932 Acts as in the 1926 Act, and the Commissioner in his regulations applicable to the 1928 and 1932 Acts gives the same construction to the words " net income of the taxpayer from the property " as he has given in applying the provisions of the 1926 Act to the instant case.

For example, article 221 (i), Regulations 74, 1928 Act, reads in part:

The phrase "net income of the taxpayer (computed without allowance for depletion)" means the gross income from the sale of oil and gas less the deductions in respect to the property upon which depletion is claimed, including overhead and operating expenses, *development expenses (if the taxpayer has elected to deduct development expenses)*, depreciation, taxes, losses sustained, etc., but excluding any allowance for depletion. [Italics supplied.]

To the same effect is article 221 (h) of Regulations 77, Revenue Act of 1932.

We think this construction by the Commissioner of the meaning of " net income " of the taxpayer from the property is correctly interpretative of the meaning of the words as used in the revenue act now under consideration, section 204 (c) (2), Revenue Act of 1926. We therefore hold that respondent committed no error when he reduced petitioner's gross income from the property in question by the sum of $91,883.28 for the taxable year 1925, in which year petitioner incurred that amount in the development of the property from which the income was received and claimed such amounts as allowable deductions in determining its net income for 1925, which deductions were allowed by respondent.

Reviewed by the Board.

*Decision will be entered under Rule 50.*