*501 OPINION.

Invested Capital.

Black:
Petitioner’s first assignment of error is that respondent erred in computing petitioner’s invested capital for the period June 4, 1920, to December 31, 1920, and for the calendar year 1921, by failing and refusing to include in invested capital the actual value of the property paid in for stock or shares, but on the contrary gave effect to the limitations prescribed in section 331 of the Revenue Acts of 1918 to 1921, and computed petitioner’s invested capital on the basis of costs to the old company, the Watab Pulp & Paper Company, of assets transferred by it to petitioner. We think this assignment of error must be sustained. In our judgment, under the facts set out in our findings of fact, section 331 of the Revenue Acts of 1918 and 1921, printed in the margin,[1] is not applicable in this proceeding. We think the situation which we have before us in the instant case is similar in many features to the facts in Leffingwell Rancho Co., 22 B. T. A. 1303, in which we held that section 331 was not applicable. In the Leffingwell Rancho Go. case, the contract which the Leffingwell Rancho Company had with the East Whittier Rancho, looking to the organization of a new company to be known as Leffingwell Rancho Company, and providing how and to whom the capital stock of the new company should be issued, was not essentially different in principle to the contract which Town had in the instant case with the Rational City Company, by which the Rational City Company advanced Town the money to purchase all the stock of the old company and by which Town agreed to organize a new company to acquire the assets of the old company, and agreed that all the first preferred stock and part of the common stock of the new company should be issued to the Rational City Company.
*502 Also, the several other contracts made by Town in acquiring the stock of the old company did not impair his ownership of the stock of the old company when finally acquired on March 15, 1920. As an upshot of these several steps detailed in our findings of fact, Town became the owner on March 15, 1920, of all the stock of the old company. It is true he had to place the stock thus acquired as collateral with the National City Company to secure the payment of the money which the National City Company advanced him to buy the stock, but that did not constitute the National City Company a stockholder of the old company. The National City Company was never at any time a stockholder in the old company, as its contract rights related exclusively to stock in the new company, which it was seeking to acquire and this was issued to it promptly after the reorganization and thereupon Town’s note was canceled. The pledge of the stock in the old company as collateral to Town’s note did not deprive Town of his rights as a stockholder as to voting or otherwise. Citrus Soap Co., 14 B. T. A. 1155; Luton Mining Co., 12 B. T. A. 720.
Town, who owned all the stock of the old company when the transfer of the assets from the old company to the new company took place, owned only 22 per cent of the voting stock of the new company and none of the preferred stock when the transaction was completed, and hence we hold that under these circumstances section 331 does not apply and petitioner is entitled to have its invested capital computed under the provisions of section 326 of the Revenue Acts of 1918 and 1921, without reference to the limitations prescribed by section 331 of said acts. H. L. Neuman Co., 16 B. T. A. 533; Ground Gripper Shoe Co., 21 B. T. A. 646.
Respondent, as authorities for his contention that section 331 is applicable, cites Shipowners & Merchants Tugboat Co., 4 B. T. A. 403, and W. A. Sheaffer Pen Co,., 9 B. T. A. 842; affd., 41 Fed. (2d) 403. We think these cases are distinguishable on their facts from the instant case. In the Shipowners & Tugboat Co. case, the evidence showed that the common stock of the old company was bought up by Robert J. McGabie, not for himself, but for the associates whom he represented, and the stock which was issued in his name was held for the account of others. Therefore, we held that when the stock of the n,ew company was distributed to these others for whom McGabie held the stock of the old company, in the same proportion as was their beneficial interest in the stock of the old company, section 331 applied. In the instant case there is no evidence that Town was buying the common stock of the old company for the account of others. It is true that the Tribune Company, John C. Shaffer, and Carroll Shaffer had certain claims against Town which were to be satisfied with stock of the new company, upon the organi *503 zation of the new company, but it seems to us that these claims did not impair Town’s ownership of the common stock of the old company when he finally acquired all of it in March 15, 1920, by paying off in full John 0. Shaffer’s notes with money which had been advanced him by the National City Company. These transactions did not make Town a mere nominee holder of the common stock of the old company such as was Robert J. McGabie in the Shipowners <& Merchants Tugboat Go. case. In the instant case John C. Shaffer completely assigned his rights in the stock of the old company to Town, and no longer held any claim on it. His claim was for reimbursement of the money which he had expended in the transaction, by having issued to him second preferred stock in the refinanced company.
In the Sheaffer Pen Co. case, supra, all the common stock at first issued was issued to the stockholders of the old company in proportion to their holdings of stock in the old company, and they were in complete control of the new company. Under such circumstances, we held that section 3B1 was applicable. Later on, other common stock Avas issued and sold to new stockholders, and we held that this later issued stock had nothing to do with determining whether or not section 331 was applicable. We have no such facts present in the instant case. For the reasons above stated, we think the Shipowners & Merchants Tugboat Co. and Sheaffer Pen Co. cases are not applicable, and on the issue of the applicability of section 331, we hold for petitioner.

Depreciation.

Petitioner’s next contention is that the basis for determining gain or loss, depreciation, exhaustion, and obsolescence of the properties acquired by petitioner on June 4, 1920, from the old company, is the fair market value thereof on that date and these allowances are not subject to the limitations prescribed by section 204 (a) (7) of the Revenue Acts of 1924 and 1926, and section 113 (a) (7) of the Revenue Act of 1928, and that respondent erred in using as a basis for computing depreciation, exhaustion and obsolescence, for the years 1924 and 1928, inclusive, the cost of such properties to the transferor corporation (old company). For the same reasons which Ave have already given as to why section 331 of the Revenue Acts of 1918 and 1921 is not applicable to the facts of this proceeding, we hold that section 204 (a) (7) of the Revenue Acts of 1924 and 1926, and section 113 (a) (7) of the Revenue Act of 1928, are not applicable. The latter provisions have to do with the determination of gains and losses, and depreciation, exhaustion -and obsolescence, whereas section 331 has to do with the determination of invested capital, but the language of the sections is very much the same, *504 except as to the percentage of ownership of stock required to determine the question of control. In section 331, the amount of ownership of interest or control required to determine the applicability of the section is 50 per cent or more, whereas in the latter acts, having to do with determination of gains or losses, depreciation, etc., the amount of ownership of stock required to determine control is 80 per cent or more.
On the issue as to the applicability of section 204 (a) (7) of the 1924 and 1926 Acts, and section 113 (a) (I) of the 1928 Act, in the matter of the determination of depreciation and obsolescence, we held for petitioner.
Petitioner does not complain of the values used by respondent in computing depreciation for the years 1920 to 1923, inclusive. In fact petitioner concedes that these values were higher than those claimed by petitioner in this proceeding, but petitioner contends that the rates of depreciation, exhaustion and obsolescence used by respondent in computing the allowance for depreciation in said years were much too low.
In our findings of fact we have determined what would be reasonable rates of depreciation to apply to the different classes of depre-ciable property which petitioner acquired from its predecessor, plus subsequent additions made thereto by petitioner. These rates of depreciation should be used by respondent in redetermining the deficiencies for each of the taxable years involved in this proceeding and the basis of cost used in figuring depreciation should be the fair market value, in this case the actual cash value as found by us, of depreciable property at the time it was acquired by petitioner, June 4, 1920, increased by the additions made by petitioner since the date of acquisition, concerning which additions there seems to be no controversy between petitioner and respondent.

Valuation of Good Will.

Petitioner contends for a valuation of good will and contracts transferred by the old company to the new company of $750,000 and that this should be included in invested capital as provided in section 326 of the applicable revenue act.
The old company carried nothing on its books for good will and contracts, but, after the old company transferred its assets to the new company, petitioner set up on its books $750,000 as representing the value of good will and contracts acquired from the old company. There is no specific rule for the determination of the value of good will. Each case must be considered and determined in the light of its own particular facts. Otis Steel Co., 6 B. T. A. 358.
*505 We have given petitioner a liberal valuation of the tangible assets transfei’red to it by the old company in June, 1920, based upon the fact that the business which petitioner took over was a prosperous, going concern. The testimony as to the value of these assets at the time of transfer was largely based upon the fact that the business was a prosperous, going concern. No doubt if it had not been for this fact the valuations fixed by the witnesses would have been considerably lower. We feel that the valuations which we have fixed on the tangible assets include adequate allowance for good will acquired with them, and that the evidence does not justify üs in separately valuing good will and contracts, as petitioner contends. We hold against petitioner on this issue.

Tentaime Tax.

Petitioner complains that respondent erred in reducing invested capital for 1921 by the amount of $41,559.57 for tentative tax, and cites L. S. Ayers & Co., 1 B. T. A. 1135; Commissioner v. Pittsburg Knife & Forge Co., 30 Fed. (2d) 522; and Independent Aetna Sprinkler Co., 15 B. T. A. 521. Respondent concedes that his action in this respect was error, but alleges, however, that in the same deficiency letter he applied $42,962.65 of current earnings of that year to the retirement of the capital stock in the same year, thereby increasing invested capital to that extent out of surplus earned during the taxable year. Respondent alleges that this was error on his part in petitioner’s favor. Fairmont & Cleveland Coal Co., 12 B. T. A. 1296; National Tea Co., 17 B. T. A. 1222. Respondent alleges that the first error, above cited made against petitioner is more than offset by the one made in its favor, and that the net result is essentially correct and ought not to be disturbed. James P. Gossett, 22 B. T. A. 1279.
An examination of the record sustains the respondent in the above contention, and we hold against petitioner on this assignment of error.

Eibel Royalty Claim.

For several years both the old company and petitioner used on paper machine No. 1 certain pitched wire attachments which infringed patent rights of the Eibel Process Company. After litigation which established the rights of the patentee, petitioner made a settlement March 1, 1923, by which it paid $6,636.24 to the patentee; $4,348.91 of this was paid for infringement by the old company and the balance for infringement by petitioner. The latter amount was allowed by the respondent as a deduction for 1923, but the $4,348.91 was disallowed. The action of respondent in this respect is approved as the amount disallowed was a liability of the old company *506 assumed by the petitioner in the purchase of assets, and was in the nature of a capital expenditure. Caldwell & Co., 26 B. T. A. 790.

Loss on Sale of Assets.

Petitioner in its return for 1925 claimed a loss of $3,113.10 on the sale of plant assets. Respondent disallowed $1,918.50 of this claim and allowed the balance, which action petitioner alleges was erroneous. The difference between the amount claimed by petitioner and that allowed by respondent arises from the difference in the cost basis used in computing the loss. Petitioner claims as cost the appraised or fair market value of the property on June 4, 1920, at the time conveyed to petitioner, and respondent the actual cost to the old company. JSTo evidence on this point was introduced other than petitioner’s income tax return for 1925, which is insufficient to set aside the determination which has been made by the respondent. Petitioner’s income tax return is a self-serving declaration and may not be accepted as proof of the loss, merely because it is claimed. Sheen v. Commissioner, 6 B. T. A. 114. The petitioner has not sustained its burden of proof in respect to the amount of loss claimed on this item. Bu/met v. Houston, 283 TJ. S. 223.
Reviewed by the Board.

Decision will be entered wader Bule 50.

Trammell :
I agree, with the exception of the exclusion of good will.

 Sec. 331. In the case of the reorganization, consolidation, or change of ownership of a trade or business, or change of ownership of property, after March 3, 1917, if an interest or control in such trade or business or property of 50 per centum or more remains in the same persons, or any of them, then no asset transferred or received from the previous owner shall, for the purpose of determining invested capital, be allowed a greater value than would have been allowed under this title in computing the invested capital of such previous owner, if such asset had not been so transferred or received.